MOIICURE, J.,
delivered the opinion of the court. After stating the case, he proceeded as follows:
In the case of Gallego’s ex’ors v. The Attorney General, 3 Leigh 450, it was held, that the English doctrine in regard to indefinite charities does not prevail in this state; that it was founded, mainly if not entirely, upon the statute 43 Elizabeth, called the statute of charitable uses, which, if it ever was in force here, was ^'repealed by the general repealing act of 1792; that charitable bequests stand on the same footing with us as all other bequests, and will alike be sustained or rejected by courts of equity; and that a bequest of money to be applied to the erection and support of a Roman Catholic chapel in Richmond, and a devise of a lot in said city to trustees in fee, upon trust to permit all "and every person belonging to the Roman Catholic church, as members thereof, or professing that religiou, and residing in Richmond at the time of the testator’s death, to build a church on the lot for the use of themselves and all others of that religion who may thereafter reside in said city; were uncertain as to the beneficiaries, and therefore void.
The authority of that case, although some of the positions therein held have been impunged elsewhere, and although the case of The Baptist Association v. Hart’s ex’ors, 4 Wheat. 1, therein much relied on, has been suppqsed to have been founded on a misconception of the English law (Vidal, &c. v. Girard’s ex’ors, 2 How. U. S. R. 127), is still firm and stable in this state, except so far as it may have been since modified by statute; having been repeatedly recognized by this court, and express^ affirmed in the recent case of Brooke, &c. v. Shacklett, 13 Graft. 301.
The devises and bequests contained in the will and codicil of Nathaniel Seaburn, now under consideration, would undoubtedly be void for uncertainty, according to the principles of the case of Gallego’s ex’ors v. The Attorney General, before cited. Indeed, this seems not to have been controverted in the argument.
But the counsel for the appellant contended that they are valid devises and bequests, under the Code, ch. 77, (j 8, p. 362; which is as follows:
“Every conveyance, devise or dedication shall be valid, which since the first day of January 1777 has been made, and every' conveyance shall be valid which "^hereafter shall be made, of land for the use or benefit of any religious congregation as a place for public worship o'r as a burial place or a residence for a minister; and the land shall be held for such use or benefit and for such purpose and not otherwise.”
On the other hand, the counsel for the appellees contended that the said devises and bequests are not valid, under the Code: First, because it does not authorize a devise, but only a conveyance, as contradis-tinguished from a devise; and, if it does; secondly, because it only authorizes land to be given for the purposes therein mentioned, and not money, though it be directed to be applied to the erection of a church on land held for such purposes; and much less, if it be directed to be applied to other purposes, as for instance, the support of a minister; and thirdly, because the devises and bequests in questiop are void for uncertainty, even though they might otherwise be valid under the Code.
Get us now consider the first of these objections taken by the counsel of the appel-lees, to wit, that a devise is not authorized by the above recited provision of the Code. If this objection be tenable, it will be unnecessary to consider the others, as this will conclude the case.
There can be no doubt but that the word “conveyance,” in its comprehensive, and perhaps in its technical sense, embraces a devise; and if it had been the only word used by the legislature in the provision in question to express the mode of transfer, it might, reasonably, have been construed in that sense; especially as it is used in that sense in other parts of the Code, as in ch. 116, 'í 1, 11. But we know that in common parlance, the word is often used in a more restricted sense, as contradistin-guished from devise; and that it has often been so used in our most important acts of legislation; as for example, in the act concerning conveyances, 1 Rev. Code 1819, ch. 99. It *is like the word “purchase,” which, technically, embraces a devise; but is generally used in a more restricted sense, and as meaning an acquisition of property by contract only. In the provision in question, “conveyance” is not the only word used to designate the *871 mode of transfer therein ínentioned. The section begins, “Every conveyance, devise or dedication shall be valid, which since the 1st day of January 1777 has been made thus tending to show that the word “conveyance” was not used here as comprehending “devise or dedication;” otherwise, it is presumable that these latter words would not have been used. But the section immediately proceeds: “and every conveyance shall be valid which herea fter shall be made,” &c. ; thus dropping the words “devise or dedication,” used in the first line of the section. We cannot suppose that the legislature, in three consecutive lines, in which the only stop is a comma, would have used the words “conveyance, devise or dedication,” as to thejiast, and the word “conveyance” only as to the future, without meaning something by the change of phraseology ; without meaning more by the three words first used, than by one of them repeated in the same sentence. The legislature obviously intended to use the word ‘ ‘convej'ance” in its restricted sense; and while they sanctioned every “conveyance, devise or dedication,” which since the 1st day of January 1777 had been made, they determined to establish a new rule for the future, and to authorize only a “conveyance” (that is, by deed) for the purposes mentioned in the section. That this was their intention, is rendered, if possible, more manifest by the manner in which the section, as proposed by the revisors, was amended and adopted by the legislature.
The section, as proposed by the revisors, was in this language: “Every conveyance, devise or dedication shall be valid, which since the 1st day of January 5T777, has been or hereafter shall be made,” &c. There could be no mistake as to the meaning of the section thus proposed ; which was made, if possible, still more plain by a long note appended thereto. If it had been adopted by the legislature as proposed, it would expressly have authorized a devise in future. It was so adopted by the house of delegates. But it was amended in the senate, by striking out the word “or,” in the third line, and inserting, in lieu thereof, the words, “made, and every conveyance shall be valid which;” so as to make the section read: “Every conveyance, devise or dedication shall be valid, which since the 1st day of January 1777, has been made, and every conveyance shall be valid which hereafter shall be made,” &c. This amendment was agreed to by the house, and the section so amended was adopted, and became a law it now stands in the Code. It seems to be inconceivable that, this amendment would thus deliberately have been made, if it had not been intended to confine the word conveyance, remaining in the section, to its restricted sense, and not to authorize for the future a devise or dedication for the use of a religious congregation. No other motive for making it has been assigned, or seems to be assignable. It could not have been made for the purpose of saving words. If that had been the purpose of the legislature, they would have struck out the words ‘ ‘devise or dedication, ’ ’ in the first line of the section, and inserted no other; thus leaving the word “conveyance” to operate in the same comprehensive sense (embracing every mode of transfer by act of the parties), as well in regard to the past as to the future. So far from saving, they increased the number of words; by striking out one and inserting eight. But their purpose being' not to authorize a devise in future for the use of a religious congregation, it occurred to them as the most natural and easy mode of effecting that purpose, *to let ihe words “ conycys nee, devise or dedication” stand in reference to the past, but to use the word “conveyance” alone in reference to the future. It is a word at least of equivocal import, and its meaning in this instance is sufficiently explained by the context.
It was argued by the counsel for the appellant, that the jealousy of church encroachments which existed at the time of the revolution, and ior'a period thereafter, has long since ceased, that the policy of ihe state on this subject has undergone a material change, and that we oug-ht now to apply a liberal, and not a strict, rule of construction to a statute authorizing the acquisition of property for religious uses.
It is not perceived that there has been any such material change of the policy of the state as the counsel supposed. No trace of any such change is to be found in the first amended constitution of 1830, nor in the case of Gallego’s ex’ors v. The Attorney General, decided so late as 1832. The opinion of President Tucker in that case, in which the policy of the state is so ably vindicated, has since met with general, if not universal approbation; which seems to be still uñaba.ted. In the amended constitution of 1851 it was, for the first time, provided, as a part of our organic law, that “the g'eneral assembly shall not grant a charter of incorporation to any church or religions denomination; but (it is added) may secure the title to church property to an extent to be limited by law.” Art. iv, ‘i 32. The object of this section was to prevent the accumulation of church property, and to authorize the title only to so much as might be deemed necessary, and consisted with the welfare of the state, to be secured by law to religious uses. The latter part of the section seems to have been designed to sanclion and authorize such legislation as had already been adopted to secure the title to church property to a limited extent, and which had been introduced by '2'the act of B'ebruary 3, 1842, entitled “an act concerning conveyances or devises of places of public worship.” Sess. Acts, p. 60, ch. 102. The revisors recommended, in their report to the legislature, a more liberal provision on this subject than had been made by that act. They proposed not only that conveyances and devises (as provided by that act), but parol dedication of land should be authorized for the use or *872 benefit of any religious congregation as a place for public worship, or /or religious or other instruction, or as a burial place or a residence for a minister. And also that books, furniture or other things, ‘‘given or acquired for the benefit of ,such congregation, to be used on the said land in the ceremonies of public worship, or in religious or other instruction, or at the residence of their minister,” should “stand vested in the trustees having the legal title to the land, to be held by them as the land is held, for the benefit of the congregation. ” Rep. Rev. p. 412, § 8 and 10. And they suggested, that if the legislature should prefer it, the 10th section could readil3r be made more extensive in its operation, by substituting therefor the following: “When any money or other thing shall be given by will or otherwise to, or be otherwise acquired bjr or for, any congregation having for its use or benefit such land as before mentioned, the same shall stand vested,” Ac. Id. note. The legislature not only'did not adopt this suggestion, but amended the 8th and 10th sections proposed by the re-visors, not only by limiting the mode of future acquisition of land to a conveyance as before stated, but by striking out the words in italics above written, to wit, the words “or for religious or other instruction,” in the 8th, and the words “or other things,” and the words “or in religious or other instruction,” in the 10th section: Thus embodying in the Code a more limited scheme of church endowment than had been provided by the act of 1842. *CJnder these circumstances, we think we ought not to apply a very liberal rule of construction to the statute, but to construe it according to the general rule. And so construing it, we think the convej’-ance by which it authorizes a transfer of land to be made for the use of a religious congregation, does not embrace a devise. We think the legislature plainly intended to alter the pre-existing law, by not authorizing such a transfer of land by devise in future. Whether the reason for the alternation was good or not, is a question which it belongs not to this court to decide. We may readily conceive what that reason was. And we must admit that the danger of an excessive and inordinate alienation-'of property to religious uses, so jealously guarded against by the policy of our law and the provision of our constitution before referred to, would be greatly increased by authorizing such alienation to be made by will, as well as by deed. And especially so, if the argument of the appellant’s counsel be correct, that a religfious .congregation may take and hold (by its trustees) not only'land, but money, and that without limit, provided it be to be laid out in land of the quantity and for the purposes prescribed by the statute, or in the erection of a church or a residence for a minister thereon, or in repairing the same, or in.the purchase of books or furniture to be used on said land in the ceremonies of public worship, or at the residence of the minister. The legislature may well have supposed that there was no necessity for encountering this increased danger; and that authority in future to convey land for the purposes aforesaid by deed only, would full}’' answer the object in view.
If a devise of land for the purposes aforesaid would be void, a fortiori a bequest of money, though to be laid out in building a church on land held for such purposes, and much more, to be invested in stock for the support of a minister to preach in said church, *would be void. The statute says nothing about money'; and the only argument used to sustain the validity of the bequest in this case, is that the money* is equivalent to land, according to the doctrine of equitable conversion.
It may be proper to state that nothing in this opinion is intended to be in conflict with the opinion delivered in the case of Brooke, &c. v. Shacklett. The conveyance in that case was by deed, executed before the adoption of the present Code; and it was not intended to express any opinion upon the question, whether a devise for the use of a religious congregation is authorized by the Code, which did not arise in the case.
For the foregoing reasons, and without expressing any opinion upon the other objections taken to the validity of the devises and bequests in question by the counsel for the appellees, the court is of opinion that the said devises and bequests are void and that the decree of the Circuit court be therefore affirmed.