# WHEELING.

## KNOX v. KNOX'S EXORS.

### July 17, 1876.

1876.
June Term.

M. K. of Wheeling, Ohio county, West Virginia, made her will on the fifteenth of April, 1870, and which was duly admitted to record on the fourteenth day of October, 1871. The sixth and seventh bequests or clauses in said will are as follows, viz:

"*Sixthly*—All the rest and residue of my estate, real and personal, including the homestead in which I have so long lived, and all my real estate elsewhere, I give and bequeath to my said trustees, Daniel C. List and James P. Rogers, in fee and in trust, for the use hereinafter mentioned; and direct that the same be sold for cash, or on such credit as my said trustees may judge best; and they are required to invest the remainder, after paying all the expenses of administration and of the estate, in some permanent manner, so that the same will draw interest, rents or dividends, the best that can be done in the judgment of my said trustees; and that the said investment is to remain perpetually, and the rents, profits or dividends to be appropriated solely for the repairing and keeping in good order Mount Wood Cemetery, near the city of Wheeling, and if there be anything of the said income left, after the keeping of the said Cemetery in good repair the remainder may be expended in beautifying the same. I enjoin, specially, on my said trustees, that my will may be observed in this matter, so that the fund will not be lost, as is too often the case in donations of this kind.

"*Seventhly*—As the time for the execution of these trusts will have a long time to run, if either of my said trustees should refuse to act or die, then, in that case the circuit court of Ohio county, in the said State, shall have the power, on motion, to fill any such vacancy; and, as it may be necessary to change the said stocks on the expiration of the charter of the said Bridge Company, or the said Bank, the said trustees, upon the order of said court, may change them as occasion may require"—HELD:

1876.
June Term.

Knox
v.
Knox's Exors.

That said sixth bequest, or clause, of said will is void, because it creates an *indefinite trust or charity*; and that the residue of the real and personal property devised to said trustees, or the proceeds thereof, by the testatrix by said sixth bequest or clause of said will, should go to next of kin of the testatrix who are her legal heirs and distributees, including the proceeds of that portion of said residue which was sold by the defendants, List and Rogers, trustees and executors named in said will, and the interests, profits, rents and dividends, arising, since the death of the said testatrix, from the said residue and proceeds, or any part thereof, or which, without the neglect or default of said trustees and executors, ought to have been collected and received by them subject, nevertheless, to the costs of the suit, and the proper expenses of disposing of, ascertaining and distributing the said residue, which costs and expenses the said trustees and executors may pay out of said residue and proceeds as properly directed by the circuit court in this cause.

Appeal by the respondents from a decree of the circuit court of Ohio county, rendered on the twenty-third day of January, 1875, in a suit therein pending, wherein Frank S. Knox and Archibald Knox, who sued by their next friend, R. B. Woods, were complainants, and Daniel C. List, and James P. Rogers, executors and trustees under the will of Martha Knox, deceased, and the Mount Wood Cemetery Company, respondents.

The will of said Martha Knox, parts of which were the subjects of consideration and construction in this court, is as follows:

"THE LAST WILL AND TESTAMENT OF MARTHA KNOX, OF THE CITY OF WHEELING, WEST VIRGINIA.

Believing it to be my duty to dispose of such estate as God has given me, I make this my last will and testament, intending thereby to dispose of all my estate, both real and personal, and will and ordain as follows, that is to say:

First. It is my will and I direct that my just debts and funeral expenses be paid.

Secondly. I will and devise all my estate, both real and personal, to Daniel C. List and James P. Rogers, to

be held by them and the survivor of them on the trusts herein mentioned, and not otherwise. And in order that they may have the full control of my estate, I hereby nominate the said List and Rogers the executors of this my last will and testament. The trusts on which the said List and Rogers shall hold my estate shall be as follows :

Thirdly. I have fifty shares of the capital stock of the Wheeling & Belmont Bridge Company, and I direct that my said trustees hold this stock for my grandson Frank Stewart Knox, son of my deceased son Franklin W. Knox, for and during his lifetime. They shall receive and invest the dividends of the said stock, so that the same shall accumulate until the said Frank Stewart Knox arrive at the age of twenty-one years, and, at that time, my said trustees shall pay and transfer to him the said dividends, together with the accumulated dividends and interest thereof, and they shall pay to him during his life the dividends to accrue after he so becomes of age during his life, and, at his death, shall transfer the said stock to the child or children of the said Frank Stewart Knox, if he leave any, or their descendants, but if he die without issue during the life of his brother Archibald W. Knox, then the said stock shall go to the said Archibald W. Knox, and if — should die leaving a child or children, then the same shall go to the said child or children, but if he die without issue, then to the heirs at law of the said Frank Stewart Knox. Also my said executors and trustees shall, out of my personal estate, take twelve thousand dollars, and shall invest the same in the best dividend or interest bearing stock or bonds, for the use of my said grandson Frank Stewart Knox, and reinvest the interest or dividends arising from the same and accumulate until my said grandson shall arrive at the age of twenty-one years, and then that the said twelve thousand dollars and the accumulated dividends or interest shall be paid to the said Frank Stewart Knox, but if he should die before that age without issue,

then the said sum of twelve thousand dollars and its accumulated interest or dividends shall be paid to the brother of the Frank Stewart Knox when he becomes of the age of twenty-one years; or if he be dead before that age without issue, then, in that case, the said last mentioned sum of money, with its accumulations, shall, by the said trustees, be paid to the heirs at law of Frank S. Knox.

1876.
June Term.

Knox
v.
Knox's Exors.

Fourthly. I have twenty-one shares of the capital stock of National Bank of West Virginia at Wheeling, and I direct my said trustees hold this stock for the use of my grandson Archibald W. Knox, another son of my deceased son Franklin W. Knox, for and during his life, and they shall receive and reinvest the dividends of the said stock, and reinvest the same in some good interest or dividend bearing stocks or bonds and accumulate the same until the said Archibald W. Knox shall come to the age of twenty-one years, and at that time my said trustees shall pay to him the said dividends and accumulations and pay to him during his life the dividends and interest thereon, and at his death, my said trustees shall transfer the said stock last mentioned to the child or children or their descendants, the said stock; but if the said Archibald W. Knox shall die without issue, then the said dividends shall be paid to his brother, the said Frank Stewart Knox, and if he be dead without issue, then to the heirs at law of him, the said Archibald W. Knox.

* Also, that out of my personal estate the said trustees and executors shall take twelve thousand dollars, and shall invest the same in the best interest bearing stocks they may be able to obtain for the use of my said grandson Archibald W. Knox, and when he shall arrive at the age of twenty-one years, then the said twelve thousand dollars, with its accumulated interest, shall be paid to the said Archibald W. Knox, but if he should die before that age with a child or children living, then to be paid to such child or children, but if he

die before that age without issue, then the said last mentioned sum of money to be paid to the said Frank Steward Knox, and if he be dead, to his children. If there are none such, then to the heirs at law of the said Archibald W. Knox. My meaning and will is that the said stocks shall be a small support for my said grandchildren, under, any circumstances, for their whole lives, and have a small fund which they can in no wise use up and be left destitute, and that these stocks and money shall go — them and their children as above provided, but in default of issue or descendants, then to their heirs at law.

Fifthly. I give to my housekeeper, Mrs. Jane Williams, all of my kitchen furniture and the bed, bedstead and bedding on which I now sleep.

Sixthly. All the rest and residue of my estate, real and personal, including the homestead in which I have so long lived, and all my real estate in Wheeling or elsewhere, I give and bequeath to my said trustees, Daniel C. List and James P. Rogers, in fee and in trust, for the use hereinafter mentioned, and direct that the same be sold for cash or on such credit as my said trustees may judge best, and they are required to invest the remainder, after the paying of all the expenses of administration and of the estate, in some permanent manner, so that the same will draw interest, rents or dividends, the best that can be done, in the judgment of my said trustees, and that the said investment is to remain perpetually and the rents, profits or dividends to be appropriated solely for the repairing and keeping in good order Mount Wood Cemetery, near the city of Wheeling, and if there be anything of the said income left after the keeping of the said cemetery in good repair, the remainder may be expended in beautifying the same. I enjoin specially on my said trustees that my will may be observed in this matter so that the fund will not be lost, as is too often the case in donations of this kind.

Seventhly. As the time for the execution of these

trusts will have probably a long time to run, if either of my trustees should refuse to serve or die, then in that case the circuit court of Ohio county, in the said State, shall have the power, on motion to fill any such vacancy, and as it may be necessary to change the said stocks on the expiration of the charters of the said Bridge Company or the said Bank, the said trustees, upon the order of said court, may change them as occasion may require.

And now I beg my dear grandchildren, for whom I have provided, to make good use of the same and not abuse it, as many young people are in the habit of doing, and with it receive my blessing.

In testimony I have hereunto set my signature and seal this fifteenth day of April, 1874.

MARTHA KNOX. [SEAL.]

Signed and acknowledged by the said testator to be her last will and testament, and we, at her request, signed our names hereto as witnesses in her presence and in the presence of each other.

DANIEL PECK,

CHAS. W. DITTMAN."

The other facts appear in the opinion of the court.

The Hon. Thayer Melvin, Judge of said circuit court, presided at the hearing below.

*Daniel Peck* and *C. W. B. Allison*, for the appellants.

*Daniel Lamb* for the appellees.

HAYMOND, PRESIDENT:

In December, 1871, the plaintiffs by their next friend, Robert B. Woods, brought a suit in chancery against Daniel C. List and James P. Rogers, executors and trustees, under the will of Martha Knox, deceased, and the Mount Wood Cemetery Company. The bill was filed in January, 1872, at rules. In the bill nothing is said

1876.
June Term.

Knox
v.
Knox's Exors.

or mentioned about "The Mount Wood Cemetery Company," but the plaintiffs aver that the "Mount Wood Association," a corporation existing under the laws of West Virginia, and having its domicile in Ohio county, claims to have some rights or interests under or by virtue of the sixth clause of the will of said Martha Knox, deceased, in the estate real and personal therein devised, or in the rents, interest or proceeds thereof; but said association is not made a defendant to the bill. Subsequent to the filing of the original bill, plaintiffs filed an amended bill, by which the said Mount Wood Cemetery Association is made a party defendant to the suit.

In the original and amended bill, it is alleged, by the plaintiffs, that in September, 1871, Mrs. Martha Knox, a widow, and at that time, and for many years previously, residing in the city of Wheeling, county of Ohio and State of West Virginia, departed this life, leaving the plaintiffs who are her grand children, her only heirs at law; that plaintiffs are the only children of Franklin W. Knox, who was the only child of said Martha Knox and that their said father died in the lifetime of his mother; that said Martha Knox being possessed of a considerable estate, real and personal, made her last will and testament, bearing date on the fifteenth day of April, 1870, which was admitted to record in the Recorder's office of Ohio county, West Virginia, on the fourteenth day of October, 1871. Plaintiffs aver that after sundry bequests and provisions contained in the preceding clauses, the following bequest and devise is made in the *sixth* clause of said will, to wit:

"All the rest and residue of my estate, real and personal, including the homestead, in which I have so long lived, and all my real estate in Wheeling, or elsewhere, I give and bequeath to my said trustees, Daniel C. List and James P. Rogers, in fee and in trust for the use hereinafter mentioned, and direct that the same be sold for cash or on credit, as my said trustees may judge best, and they are required to invest the remainder, after the

paying of all the expenses of administration, and of the estate, in some permanent manner so that the same will draw interest, rents or dividends—the best that can be done in the judgment of my said trustees, and that the said investment is o remain perpetually, and the rents, profits or dividends to be appropriated *solely for the re-pairing and keeping in good order Mount Wood Cemetery, near the city of Wheeling;* and if there be anything of the said income left after the keeping of said Cemetery in good repair, the remainder may be expended in beautifying the same. I enjoin specially on my said trustees that my will may be observed in this matter, so that the fund will not be lost, as is too often the case in donations of this kind." The plaintiffs allege and insist that the said *sixth* clause in said will is void, and that they, as the only heirs and distributees of the said Martha Knox, deceased, are entitled to the estate, real and personal, and the rents, interest or proceeds thereof, in said clause devised and bequeathed. Plaintiffs also allege that the executors and trustees of the said Martha Knox aforesaid, assuming the validity of said *sixth* clause of said will, have sold all the real estate therein devised, as plaintiffs are informed, for the sum of $19,3C0; that the sale was made on the fifteenth day of December, 1871, and the purchase money bearing interest from that date; that they (plaintiffs) do not object to said sale being affirmed and perfected, but without prejudice to any interests, devises or demands of the plaintiffs under the said *sixth* clause either to the real estate or to the proceeds thereof. The plaintiffs pray in their bill that they be declared entitled, as heirs at law and distributees of the said Martha Knox, to all the estate, real and personal, expressed to be devised and bequeathed in said *sixth* clause of said will, and that the said defendants, the executors and trustees, under the said will, be ordered and decreed to convey, transfer and pay over all said estate real and personal, or the proceeds thereof, to the plaintiffs. The bill also prays for general relief. (The plain-

1876.
June Term.

Knox
v.
Knox's Exors.

tiffs filed with their bill an official copy of the will of said Martha Knox.) . . . . . . . . . . .

The defendants List and Rogers, executors and trustees, &c., as aforesaid, appeared to the cause in court, and by leave of the court, filed their demurrer and answer to the original and amended bills, to which answer the plaintiffs replied generally and joined in the demurrer.

The Mount Wood Cemetery Association demurred to and answered said bills on the first day of April, 1872, and the plaintiffs set the demurrer down for argument and replied generally to the answer; but it appears, by the record, that on the second day of April, 1872, the said Association, by consent of parties, withdrew its demurrer to said bills. . . . .

List and Rogers in their answer say, substantially, that the said sixth clause of the will is not void, but is effective and is according to law; that the testatrix had full power to dispose of a portion of her property in that manner, which was not only legal but meritorious; that she was a very old woman and had lived all her life in and near the city of Wheeling, and was the daughter of the late Colonel Archibald Woods; for whom Mount Wood Cemetery was named: "That the said father was one of the first settlers in this neighborhood, and was a man of note in the country, and she was desirous of perpetuating his name, by preserving the said Cemetery and beautifying the same for such purpose, which the respondents submit she had the right to do, and it was a public benefaction so to do; and respondents adopted the answer of said Association so far as the facts are therein stated. . . . . . . . . . . .

The Association, in its answer, admits that the copy of the said will exhibited with the original bill is correct, and that the sixth clause thereof is correctly stated in said bill, and that it claims to have some rights and interests under and by virtue of said sixth clause of said will; and that the plaintiffs are the only heirs of the testatrix. But it denies that said sixth clause is void, or

that complainants have any interest in any of the property, or its proceeds disposed of in the said clause. It admits the sale of the property by the executors and trustees as charged, and insists that it was their duty to make the sale. The said Association also admits that it was organized under the law as stated in the amended bill, and that the copy of its certificate of incorporation filed with said amended bill, is correct, but denies the charge that no part of said "Cemetery belongs, or at the death of" the testatrix, did belong to said Association. It also denies the charge that no part of said Cemetery belonged to the testatrix, at her death or at any time during her life. The Association further alleges and avers, that the facts in regard to the Mount Wood Cemetery are, that the location of said Cemetery was well known to the testatrix, and of public notoriety throughout the city of Wheeling and county of Ohio; that there is but one grave yard or cemetery of that name within said county; that said Cemetery is situated on an eminence in the north part of said city, and is, and for several years before the execution of said will, was enclosed, laid out into burial lots, walks and carriage ways, with numerous graves, vaults, tombstones, and monuments, and beautifully adorned; the enclosure containing some fourteen or fifteen acres, and exclusively in the possession and control of respondent, used and occupied exclusively for burial purposes, and accessible to the public, and a place of common public resort for the many friends of the numerous persons therein buried, and of the citizens of the city of Wheeling and vicinity, and visitors generally; that said "Mount Wood Cemetery" was originally laid out as a burial place in the year 1848 by the "Mount Wood Cemetery Company," a corporation organized under the act of the Virginia Legislature, entitled "An Act to Incorporate the Mount Wood Cemetery Company, in the city of Wheeling," passed March 20, 1848. The land then belonged to two of the corporators, Benjamin B. McMechen and Joseph M. Bushfield;

1876.
June Term.

Knox
v
Knox's Exors.

that a plat of said cemetery as first laid out, was certified by the President and Secretary of said "Mount Wood Cemetery Company," and admitted to record in the proper office in Ohio county, on June 2, 1848, the legal title to the lots and grounds still remaining in the said McMechen and Bushfield, subject to the rights of said Mount Wood Cemetery Company, by virtue of its charter which was accepted by said McMechen and Bushfield ; that sometime previous to December, 1849, the said Benjamin B. McMechen died, and his right, title and interest in and to said Cemetery and ground, passed, by descent, to Benjamin McMechen, his heir at law ; that on the sixth of December, 1849, the said Joseph M. Bushfield conveyed all his right, title, and interest therein to the said Benjamin McMechen by deed duly admitted to record in the proper office of said county of Ohio on the day of its date ; that the property therein conveyed is described as follows : "All my right, title and interest in a certain tract of land heretofore bought by Benjamin B. McMechen, deceased, from Hamilton Woods, under which is laid out the Mount Wood Cemetery, and also all my interest, right and title that I can or may have in and to the said Mount Wood Cemetery, vested in me by virtue of the act of Assembly, incorporating said Mount Wood Cemetery, &c. ;" that on the eighth of September, 1853, the said Benjamin McMechen conveyed to John R. Morrow, by general warranty deed, all his right and title in and to said premises, by the following description : "All that parcel of land, chiefly within the city of Wheeling, which was conveyed to Benjamin B. McMechen (now deceased) by Hamilton Wood by deed dated twentieth September, 1847, and recorded in the clerk's office of Ohio county, Virginia, containing fourteen acres more or less, including all the right, title, interest and estate of said party of the first part (Benj. McMechen) either as heir of said Benjamin B. McMechen, deceased, or as grantee of Joseph M. Bushfield, or otherwise, in and to said parcel of land, and including

the cemetery or burial lots laid out as the same, and all rights appurtenant to the same, but excepting from this conveyance, all such burial lots and privileges, and other parts of said land, as have been heretofore conveyed to other persons by the said Benjamin McMechen and Joseph M. Bushfield, or the said party of the first part, the said parcel of land, being the same on which 'Mount Wood Cemetery has been laid out;'" that this deed was also duly admitted to record in the proper office in Ohio county; that on the fifth of February, 1858, the said John R. Morrow laid out additional lots to said cemetery, a plat of which was that day acknowledged by him and admitted to record, and is recorded in the recorder's office of said county, as "Mount Wood Cemetery, addition No. 1;" that shortly after the passage of the act of 1848, the said Mount Wood Cemetery Company, was organized thereunder, and the organization was kept up and continued until the year 1866, having in the meantime possession and control of said cemetery, and, during which time, many of the lots therein were sold, from time to time, and conveyed to the purchasers by the said John R. Morrow, Benjamin McMechen, Benjamin B. McMechen, and Joseph M. Bushfield, respectively, the conveyances all being so restricted and conditioned, that the lots so conveyed are to be "used for burial purposes and none other, and under and according to the terms of the charter granted for the incorporation of said cemetery, and in conformity with the rules and regulations that may from time to time be adopted by the Mount Wood Cemetery Company, under the charter aforesaid; that in course of time difficulties arose between the officers and trustees of the "Mount Wood Cemetery Company, and the lot holders on one part, and the said John R. Morrow, the owner of the unsold lots and ground, upon the other, which seemed impossible to reconcile under the charter of March 20, 1848, and therefore by the mutual consent of the lot holders, and the said John R. Morrow and the "Mount Wood Cemetery Company," the re-

spondent was incorporated and organized under the general law of March 2, 1864, to take the place, and act as the successor of Mount Wood Cemetery Company," and the said John R. Morrow sold and conveyed to respondent all the unsold lots in said cemetery, being in number from one thousand to two thousand, and all his interest in said cemetery, which conveyance was executed June 10, 1867, and recorded August 5, 1867, in said recorder's office; that on the first of September, 1869, respondent purchased from one William Tallant, an additional piece of ground contiguous to that conveyed to it by said Morrow, and within the cemetery enclosure, and immediately thereafter laid the same out into burial lots, walks, and carriage ways, as part of said Mount Wood Cemetery; that said Tallant conveyed said piece of ground to respondent by deed of September 1, 1869, which was duly recorded April 15, 1870, in said recorder's office; that ever since said conveyances were made to respondent, it has endeavored to make sales of the unsold lots to every person desiring to purchase for burial purposes, and it has sold many lots for such purposes, and none other, executing to the purchaser deeds therefor; that about one thousand of said lots remain unsold, and are now owned by respondent; that by the act of March 4, 1868, entitled "An Act to authorize the trustees of Mount Wood Cemetery Association to levy a special annual tax upon the lot holders thereof," the Legislature of the State recognized respondent as in the possession and control of said Cemetery, it being the only burial ground owned, controlled and possessed by it; that respondent consents to the trust created by the said sixth clause of said will, and asks that the same may be carried out fully and in good faith. The answer further alleges that the testatrix was the widow of Charles D. Knox, deceased, who died many years before the said Martha, and who was buried upon one of the lots in said cemetery, which he owned at his death, and which afterwards was improved by and claimed, and under the con-

trol of the said testatrix, as a family burying ground un-
til her death, she having also donated money for the
general improvement of said Cemetery.    Copies of the
deeds referred to in said answer, from John R. Morrow
and William Tallant, are filed therewith as exhibits.

The deposition of John Bishop is taken and filed by
defendants, and he therein deposes to the truth of the
facts stated in the answer of said Association.    By the
*second* clause of said will the testatrix devises all her
"estate both real and personal, to Daniel C. List and
James P. Rogers, to be held by them, and the suvivor of
them, on the trusts hereinafter mentioned, and not other-
wise."    And in order that they may have the full con-
trol of her estate, as she says in said clause, she nomi-
nates and appoints said List and Rogers the executors of
the will.

On the amended bill there is this endorsement, signed
by the counsel of each of the defendants and of the
plaintiffs to this effect: "Agreed, that this case shall be
heard as if proper summons had been, in due time,
issued and served on the amended, as well as original bill,
against all the defendants.    The demurrer of List and
Rogers is to be regarded as a demurrer to each of said
bills."

The cause was heard by the said circuit court on the
twenty-third day of January, 1875, on the original and
amended bills, and the exhibits filed therewith, the sum-
mons and returns, the agreement of the parties endors-
ed on the amended bill, the demurrer of the defendants
and joinder therein by the plaintiffs, the answers and
exhibits therewith filed, and the general replications of
the plaintiffs to these answers respectively, the deposi-
tion of John Bishop, and the former orders and proceed-
ings in the cause : And the court adjudged and declared
the *sixth* clause of the will of Martha Knox, mentioned
in the bills and proceedings, and the devise and bequest
in said clause expressed, to be made, to be void and of
no effect; and that the plaintiffs, as the heirs and distribu-

18

tees of the said Martha Knox, are entitled to the residue in that clause mentioned of the estate real and personal, to which the said Martha Knox at the time of her death was entitled, including the proceeds mentioned in the original bill, of that portion of said residue which was sold by the defendants, List and Rogers, trustees and executors, named in said will, and the interest, profits, rents and dividends arising since the death of the said Martha Knox, from the said residue and proceeds or any part thereof, or which without the neglect or default of the said trustees and executors, ought to have been collected and received by them, subject nevertheless to the costs of the suit, and the expenses of disposing of, ascertaining and distributing the said residue, as herein provided, which cost and expenses the said trustees and executors are "hereby directed to pay out of said residue and proceeds." And the court also adjudged, ordered and decreed, that the cause be referred to a commissioner of the court, who giving reasonable notice to the parties, shall take and state an account of the residue and proceeds aforesaid, and of the interests, profits, rents and dividends and expenses aforesaid, and make report thereof to the court, with all convenient speed, together with anything deemed pertinent by himself, or specially required by any party. And all other questions and directions are reserved. From this decree the defendants applied for, and obtained from, one of the Judges of this Court an appeal to this Court. The appellants in their petition assign the following as errors in said decree, viz.:

"1. Because the bill was insufficient, and did not show any cause for the annulling the said *sixth* clause of the said will, and the demurrer thereto ought to have been sustained.

"2. Because there is nothing contained in the said *sixth* clause in any wise contrary to the law of the land, or was in any manner unlawful, as appears by the said will and the other pleadings.

"3. Because there was no judgment on the demurrer."

No other errors of importance have been assigned or brought to the attention of this Court by the appellants' counsel. And no exception has been made or interposed by the appellee's counsel as to the decree in this cause not being such from which an appeal is authorized. The counsel for appellants and appellees in their arguments before this Court, seem to admit that the decree is such as authorizes an appeal therefrom to this Court. I have not, therefore, examined this question with the same care as I should, if the jurisdiction of this Court to entertain this appeal had been brought in question by the counsel; but from the examination and reflection I have given the subject, I think this Court has authority under the law, to entertain this appeal and to consider and determine upon the correctness of the decree appealed from.

The appellees, by their counsel, claim and argue that the said *sixth* clause of said will is void because it is an indefinite charity or trust, and, if not void on this account, it constitutes a perpetuity and is therefore void at common law. Before entering upon the discussion of any of the questions involved, for decision, I deem it proper to state some of the legislation of Virginia and West Virginia, bearing, in principle, at least, upon some of the questions before us. In 1832 the case of *Gallego's Exors. v. The Attorney General*, 3 Leigh. 450, which is hereinafter referred to, was decided, and in, and by, that case, some of the most important principles of law and equity applicable to this case were settled and determined; and as thus settled and determined they have remained and continued to be the law and rule in Virginia and West Virginia from that time to the present, except so far as changed by subsequent acts of the legislatures or the constitutions of the states, respectively. By an act of the Legislature of Virginia, passed February 3, 1842, (Va. Acts, 1841-2, p. 60,) it was provided that "when any lot or part of a lot, tract or parcel of land, has been heretofore conveyed or devised, to one or

1876.
June Term..

Knox
v.
Knox's Exors.

more trustees for the use and benefit of any religious congregation, as and for a place of public worship, the same, and all buildings and improvements thereupon, shall be held by such trustee or trustees and their successors for the purposes of the trust and not otherwise." This act applied alike to *conveyances* and *devises* whether made before or after it took effect; but is expressly limited, by its terms, to conveyances and devises to trustees for the benefit of a religious congregation. So far as I now remember, the law remained in this form until the revision of 1848 of the laws of Virginia. The revisors, in their report of 1848, proposed a provision of wider scope and operation. They reported the following as the eighth section of chapter seventy-seven of the code of Virginia. (See revisers' report, page 411.) "8. Every conveyance, devise or dedication, shall be valid, which, since the first day of January, 1777, has been, or hereafter shall be, made of land for the use or benefit of any religious congregation as a place for public worship, or for religious or other instruction, or as a burial place or residence for a minister; and the land shall be held for such use or benefit, and for such purposes, and not otherwise." But the legislature in acting on the report, made a material change in the section so reported. The said eighth section, as adopted by the legislature of Virginia, reads as follows: "8. Every conveyance, devise or dedication, shall be valid, which, since the first day of January, 1777, has been made, and every *conveyance* shall be valid which *hereafter shall be made*, of land for the use or benefit of any religious congregation as a place of public worship, or as a burial place or a residence for a minister; and the land shall be held for such use or benefit, and for such purpose, and not otherwise." The section as reported by the revisors, declared every conveyance, devise or dedication for the purpose specified to be valid; but the section, as adopted as applicable to the future, only provides as to *conveyances* and not *devises*. In the case of *Seaburn's*

*Exors. v. Seaburn*, 15 Gratt. 423, it was *decided*, by the court of appeals of Virginia, in 1859, that "The act, code of Virginia, chapter seventy-seven, section eight, does not authorize a *devise* of land for the use of a religious congregation, but only a *conveyance* by deed." Of course the same rule must apply to a "burial place or a residence for a minister," in construing said eighth section. Said eighth section as found in the code of Virginia of 1849 is contained in the code of 1860, page 412. The provision contained in the code of West Virginia of 1869 is the same, in effect, as the eighth section of said chapter seventy-seven, in the code of 1849 of Virginia. (See section one of chapter fifty-seven, page 414 of Code of West Virginia.) The eighth section of chapter seventy-seven of the code of Virginia, continued to be the law of West Virginia, until the code of 1869, of West Virginia took effect, and was continued by said last named code, and is still in force.

Mrs. Martha Knox, as we have seen, died in September, 1871, at which time her will took effect. The said first section of chapter seventy-seven of the Code of West Virginia, does not authorize or make valid the said *sixth* clause of said will. And it may safely be assumed that there was no statute law in force at the making of said will, or the death of said testatrix, or since, that authorized or made valid, the said *sixth* clause of said will. The *sixth* clause of said will, manifestly, is not covered by any provision in the said first section of chapter seventy-seven of the code of West Virginia; and if said *sixth* clause of said will is valid, it must be so by virtue of some law independent of any statute law of this State; and I am not aware that we have any law in force in this State applicable to this case independent of the statute law, unless it be the Constitution or the common law. It is not contended that there is any provision in the Constitution which authorizes the said *sixth* clause, or can be applied to it. The English statute of uses, (if ever in force in Virginia) was repealed in 1792 by the Legisla-

1876.
June Term.

Knox
v.
Knox's Exors.

1876.
June Term.

Knox
v.
nox's Exors.

ture of Virginia, and courts of chancery have no jurisdiction to decree charities under and by virtue of that statute. *Gallego's Exors. v. The Attorney General*, 3 Leigh. 450; *Brooke v. Shaklett*, 13 Gratt. 301; *Seaburn's Exor. v. Seaburn*, 15 Gratt.; *Bible Society v. Pendleton, Trustee*, 7 W. Va., 79.

It only remains to inquire whether said *sixth* clause, of said will, is valid at common law, and, if not, to whom should the property or estate, real and personal, mentioned in said *sixth* clause, or the proceeds thereof, go?

Joseph Gallego, who died in July, 1818, was seized and possessed of a large estate, real and personal. He resided, at his death, in the city of Richmond, Virginia. He made a will before his death, which seems to have been duly executed, and in his said will he directed his executors to lay by $2,000, to be distributed *among needy, poor and respectable widows;* and, in case the Roman Catholic Chapel shall be continued at the time of his death, to pay $1,000 towards its support; and, if the Roman Catholic Congregation shall come to a determination to build a chapel at *Richmond,* to pay $3,000 towards its accomplishment; and he devises a lot in *Richmond,* to four trustees in fee, upon trust to permit, *all and every* person belonging to the Roman Catholic church, *as members thereof, or professing that religion, and residing in Richmond at the time of his death,* to build a church on the lot, for the use of *themselves, and of all others of that religion,* who may hereafter reside in Richmond. Upon information filed by the Attorney General, in chancery, to enforce the charitable bequests and devise; *Held,* that the bequests and devise are uncertain as to the beneficiaries, and are, therefore, void; *Gallego's Exors. v. The Attorney General,* 3 Leigh 450. In that case Judge Carr, on page, 462, says, in speaking of the statute 43, *Elizabeth:* "and as that statute, if ever in force here, was repealed in 1792, I conclude that *charitable* bequests stand on the same footing, with us, as all others, and

will alike be sustained or rejected by courts of equity. I think that the bill of the attorney general must be dismissed." Cabell, Judge, concurred in opinion with Judge Carr. Judge Tucker, in same case, on page 465, says: "There is no principle supposed to be more perfectly settled, in reference to conveyances, than that every deed must have sufficient certainty, as to the grantee, who is to take under it. If there be such uncertainty as to the grantee, that it cannot be known distinctly who is to take by the grant, it is *ipso facto* void, for that uncertainty." Again on page 466, Judge Tucker says: "There is not more necessity for a properly defined grantee, in a deed, than for a *cestui que trust* capable of taking, and so defined and pointed out, that the trust will not be void for uncertainty. In short, there cannot be a trust without a *cestui que trust;* and if it cannot be ascertained who the *cestui que trust* is, it is the same thing as if there was none. These principles, it is confidently believed, are the general principles of the common law upon this subject." Again, on page 467, the same Judge says: "A diligent search has led me to the conviction, that there was no case at common law, in which a bequest or a trust of this *indefinite* character, could be supported; and the learned counsel on both sides have acknowledged that they have been unable to discover any case anterior to the statute of 43 *Elizabeth*, in which the validity of such bequests or trusts has been distinctly recognized by the courts. It ought, therefore, perhaps, to suffice to rest the argument here; since, if under the general principle the bequest would be void, it is incumbent upon those who claim to be protected by an exception, to establish that exception. Accordingly, it is contended that gifts for charitable uses furnish an exception; and when it is answered that *indefinite* charities received their whole force and efficacy from the statute, 43 *Elizabeth* it is confidently replied, that charities existed, and were recognized by law, anterior to that statute; that the statute itself affords evidence of the fact; that it

ought not to be regarded as an enabling statute, or as creative of an original power not before existing, but as affording new and additional facilities for the administration of charities of a particular description.    *    * That charitable gifts were known and recognized by the law anterior to the statute of *Elizabeth*, it is not necessary to deny.    It is not doubted that many charitable gifts were so known and recognized.    Charitable gifts for meritorious purposes, not within the statutes of *mortmain*, were doubtless held good and enforced, when the beneficiary or grantee was a person, whether natural or artificial, capable to take.    Thus a bequest to a corporation capable to take, is, and always was valid as a charitable gift."    *    *    Again, on page 471: "It is far more reasonable to conclude, that, as these vague dispositions were certainly against the principles of the common law, this new statute was enacted for the purpose of giving validity, and enforcing them, by a scheme, clumsy enough, it must be admitted, and therefore affording strong evidence that the commodious remedy in equity was unknown, but obviously designed for that purpose as I shall presently show."    Again, on page 474 the same Judge says: "Having thus deduced from the statute of charitable uses, that before its enactment, indefinite legacies were not considered as susceptible of being enforced, though for charitable objects, it may next be observed, that the scanty cases to be found in the early reporters, afford no ground for a contrary opinion." See also 4th *Wheaten* 1.    Judge Tucker, at pages 480 and 481, 3 Leigh, further says:    "But it is relevant to observe, that conveyances in *mortmain* to corporations, were not more calculated to produce a pernicious locking up of property, than charitable bequests of this indefinite character.    A corporation may be dissolved, and the property may be again taken up into the general circulation, by reverting to the donor.    But these charities never die.    There is no means of putting an end to them in the lapse of ages, ; for according to this celebra-

ted doctrine of *cy pres*, if the original object should fail, the *attorney general* and the master in chancery go to work to digest another scheme, *cy pres* the original intention of the donor.    Such was the case of the charity to *William and Mary College*.    Experience has justified these complaints, and accordingly, about one hundred years ago, the parliament of Great Britain found itself compelled to pass the statute of 9 George II, which, in important particulars, repeals the statute of 43 *Elizabeth*. It is at this moment, when the country whose laws we have adopted, has partly receded from the wretched policy of permitting the whole property of society to be swallowed up in the insatiable gulph of public charities, that we are called upon to reanimate the pernicious principle, which they now deprecate, and which with us has been sleeping in inaction, for nearly two centuries and a half.    And this, too, when we have put off the panoply of the *mortmain* acts by the general repeal of them in 1792. It is said, indeed, that the legislature may pass the necessary laws for regulating these charitable gifts, and thus prevent the evils that might flow from the unlimited permission of them.    But I think, under the existing doubts which hang around the subject, and after the lapse of centuries, during which the law respecting charities, if it ever existed here, has been silent and quiescent, it behooves the judiciary to leave to the legislatures the duty of waking it into life." I shall not quote further from this case, but refer to the other portions of the opinion of the judge bearing on the question under consideration, not quoted.    In the case of *Brooke v. Shacklet* 13, Gratt. 301, the case of *Gallego's Exors. v. The Attorney General* was approved.    So also in the case of *Seaburn's Exor. v. Seaburn*, 15 Gratt. 423 the case of *Gallego's Exors.* aforesaid, was recognized as law, except so far as it may have been modified by statute.    And this Court, in the case of the *Bible Society v. Pendleton*, Trustee, 7 W. Va., recognized the principles determined in the *Gallego case* as law in this State, except so far as modified

19

by subsequent legislation, and in that case, the lamented Judge Paull, in delivering the opinion of the court, said "These indefinite charities, however it may be in other States, have in Virginia been held invalid at common law by the highest court, and since the repeal of the statute of 43 *Elizabeth*, by her legislature, have been held incapable of execution. The want of clearly recognized grantees or of clearly recognized beneficiaries, constitute the indefinite character of these charities, and renders them void at common law." See also *Dashiell v. The Attorney General*, 5 Har. & Johns, 392, 6 Ib. page 1. *Levy v. Levy*, 33 N. Y. 97. In the case of *Dashiell*, the testator directed his executors, after payment of his debts, to pay over the proceeds of his estate to trustees named in the will, to be applied in part "towards feeding, clothing and educating the poor children of Caroline county, in the State of Maryland, *which attend* the poor charity school established at Hillsborough in said county, the trustees of which school are to receive from my trustees the aforesaid appropriation in payments, at every six or twelve months, and appropriate the same in the manner I have now willed." The court of appeals of Maryland *held* the devise to be void, because "no persons exist having in themselves a vested equitable interest which they are capable of enforcing in a court of equity. "The bequest," said the court, "therefore is too vague and indefinite to be carried into execution on general principles, there being none who can show themselves entitled to the beneficial interest; but is void, and the subject of the trust being undisposed of, the benefit of it results to the next of kin as in the case of *Morice v. The Bishop of Durham* 9, Ves. 399. If it were otherwise, the trustees, by neglecting to execute the trust, might virtually convert the trust into the ownership of the trust fund. * * There is no difference whether a devise or bequest be immediate to an indefinite object, or to a trustee for the use and benefit of an indefinite object. If it be immediate to an indefinite object, it is void, and if the trust be

for an indefinite object, the property that is the subject of the trust is not disposed of, and the trust results for the benefit of those to whom the law gives the property in the absence of any disposition of it by the testator or donor," 5 *Han. & Johns* 399, 400. In the case of *Levy v. Levy*, 33 N. Y. 97, Wright, Judge, who delivered the only opinion that appears in the case, says on page 101, "the residue of the estate is donated in trust, to establish and maintain, perpetually, in a foreign State, a school for agricultural instruction of half orphan children of warrant officers of the United States Navy. This disposition, it must be conceded, according to the ordinary rules of law, and the general rule in chancery as to trusts, is void. It cannot be claimed that at common law, there can be a valid devise or bequest to an indefinite object, or a valid use without an ascertained *cestui que trust* or beneficiary. Again he says on same page, "There must be a beneficiary or certain equitable donee, grantee or devisee. If a trust be by will declared, and there be a certain beneficiary, capable of coming into court and claiming the benefit of the trust, it is good. On the contrary, if there be no ascertained beneficiary, no definiteness of purpose will raise a trust." Again on page 102, he says, "there can be no valid trust unless there be a certain donee or beneficiary whom the law will recognize; and if there be, the use will not be defeated, though no trustee be named, or the trustee named be incapable of taking." And the Judge cites a number of authorities to sustain this proposition, and he recognizes the decision in *Gallego's Exors.* as being a correct exposition of the law, and approves, and quotes largely from, the opinion of Judge Tucker in that case.

In the *Levy case* the judge further says on page 102: "There being a sufficient declaration of the use, and a certain beneficiary ascertained, the presence or absence of a trustee in the limitation will make no difference, for equity will not allow a gift to fail for want of a trustee," and on page one hundred and seven, he further says:

"A charitable trust is simply an indefinite or uncertain trust—a trust without a beneficiary; and certainly a trust of that description is void by the rules of the common law as it existed at the time of its adoption by us, and now exists," etc. In the case of *Morrice v. The Bishop of Durham*, 9 Ves. 521, Lord Chancellor (Elden) says on page 527: "If a testator expressly says he gives upon trust, and says no more, it has been long established that the next of kin will take. Then if he proceeds to express the trust, but does not sufficiently express it, or expresses a trust that cannot be executed, it is exactly the same as if he had said, he gave upon trust and stopped there, as in *The Bishop of Cloyne v. Young*. There is no difficulty upon that." See also p.p. 537, 539. "Once establish that a trust was intended, and the legatee cannot take beneficially. If a testator gives upon trust, though he never adds a syllable to denote the objects of that trust, or though he declares the trust in such way as not to exhaust the property, or though he declares it imperfectly, or though the trusts are illegal, still in all these cases, as is well known, the legatee is excluded, and the next of kin will take."

In the case of *Wheeler v. Smith*, 9 Howard, 55, it was held by the Supreme Court of the United States, "That the statute of 43 *Elizabeth*, respecting charitable uses, having been repealed in Virginia, the courts of chancery have no jurisdiction to decree charities when the objects are indefinite and uncertain. Therefore when a bequest was made to trustees for such purposes as they considered might promise to be most beneficial to the town and trade of Alexandria, such bequest was void." In that case Justice McLean delivered the opinion of the court, and after citing several cases bearing on the question, he says: "From the principles laid down in the above cases, it is clear that the devise under consideration cannot be sustained. A trust is vested in the executors, but the beneficiaries of the trust are uncertain, and the mode of applying the bounty is indefinite. It is

1876.
June Term.

Knox
v.
Knox's Exors.

urged that the testator intended to give to the town of Alexandria in its corporate capacity, the residuum of his estate. But he did not so express himself. On the contrary, it clearly appears that the executors were made the repositories of his confidence, and the only persons who were authorized to administer the trust. The *cestui que trusts* were the town and the trade of the town. It would be difficult to express in more indefinite language the beneficiaries of a trust. How can a court of chancery administer this trust? On what ground can they remove the trustees for an abuse of it? The discretion of the trustees may be exercised without limitation, excepting that the fund must be applied for the benefit of the trade and town of Alexandria." It must be clear, from the authorities cited, that the statute 43 *Elizabeth*, if ever in force in Virginia, was repealed, and that the principles settled in the case of *Gallego's Exors. v. The Attorney General*, 3 Leigh., is the law in Virginia and West Virginia, except, so far as since modified or changed by acts of the legislature. Whatever may be the law in other states, there can no longer be any doubt that in Virginia and West Virginia indefinite charities are void. The want of clearly recognized beneficiaries, constitutes the indefinite character of these charities and renders them void.

It seems the Mount Wood Cemetery Association is a corporation organized in 1866, under an act of the legislature. The bequest under consideration in this case is not to the Mount Wood Cemetery Association, nor in trust for it, but for the repair and embellishment of *Mount Wood Cemetery, near the city of Wheeling*, irrespective of the ownership. The corporation is no more the *cestui que trust* than is each owner of a burial lot. The bequest fails to designate or recognize clearly any *cestui que trust*. There is no beneficiary who could compel the trustees to administer the trust, according to the terms or meaning of the bequest. The bequest recognizes no beneficiary who can sue the trustees in equity. There is

1876.
June Term.

Knox
v.
Knox's Exors.

no certain beneficiary recognized by the bequest who has any certain definite right. The investment is to remain perpetually, and the income is to be appropriated by trustees who were selected by the testatrix as the repositories of her confidence, as they shall deem necessary or proper to the purpose expressed in the will. If the owner of any one burial lot claims that any amount of the income shall be applied to repair his grounds, or to embellish them, it would, on the part of the trustees, be a sufficient answer, that they had appropriated or intended to appropriate, the income of the fund in a differ-ferent place consistent with the purpose declared in the will, or to the repair and embellishment of other portions of the Cemetery. If the provision of the bequest is to be carried into execution, the plan and mode in which the income is to be applied to the repair and embellishment of the Cemetery, depend upon the the judgment of the trustees and they may apply, much or little, or none of it to any particular part of the land. No person is entitled to any definite or certain right, nor can any one file a bill in equity against the trustees on the ground that they have applied, or are about to apply, the income of the fund to other parts of the cemetery grounds not belonging to the complainant. The highest courts of several states of the Union have ruled and decided differ-ently, as to indefinite charities, from the courts of Virginia, but it is only because of the courts of those states determining the law in their respective states on the subject to be different from what it is in Virginia and West Virginia upon the subject. Upon the whole, I am of opinion that said bequest is void, because as a charity, it is indefinite and uncertain—no *cestui que trust* is clearly ascertained. And I am further of the opinion under the authorities cited, bearing on the subject, that the whole amount of the proceeds of the property real and personal mentioned in said sixth bequest, and devised to said trustees in and by said sixth clause of said will, should and does, by the law of this State, pass to the

plaintiffs as the next of kin and legal heirs of the testatrix.

But it is argued that the plaintiffs must elect; and if they claim the provisions made for their benefit in the third and fourth clauses of the will, they must confirm the devise contained in the sixth clause. The principle of election by implication, in equity, depends on the circumstances that the same instrument which transfers or conveys certain property of the testators to one legatee or devisee, transfers or conveys certain other property to another legatee or devisee, and that the former beneficiary, availing himself of the instrument in one particular, must not defeat its operation in another. But if the latter devise or bequest be invalid—if the instrument in respect to it be *legally* inoperative and void—the former beneficiary, retaining his own property, does not defeat the operation of the instrument. If it be a will, it does not defeat the intention of the testator *legally* declared. Retaining the subject of a transfer does not disappoint the instrument, if the law has already avoided and nullified the transfer." 1, Leading Cases in Equity, ed. 1859, top page 404; *Hearle v. Greenbank*, 3 Atk. 715.; *Kearny v. Macomb*; 15 N. J., ch. 195–7; *Gardner v. Fell*, 1 Jac. & Walk. 22; *Sheddon v. Goodrich*, 8 Ves. jr. 481; *Wellaston v. King*, Law R. 8 Eq. Cas. 165; *Fowler v. Fowler*, 33 Beavan 616; *Thorndike v. Loring*, 15 Gray 391; *Battle Square Church v. Grant.* 3 Gray 143.

The court in decreeing, as *it did*, on the bills, must be considered as having passed upon the sufficiency of the bills on the demurrer. And although the court did not *pro forma*, overrule the demurrer filed in the cause, the bill being sufficient and containing sufficient matter to give a court of equity, jurisdiction, the court did not commit an error for which its decree should be reversed.

It is also argued by the counsel for the appellee that said sixth clause or bequest in the will of the testatrix, is void, because it constitutes a perpetuity of the estate devised, and is prohibited by the common law. We have

no statute in this State prohibiting *perpetuities*, but under and by the express provision of the thirty-sixth sec, tion of Article eight of our State Constitution, such parts of the common law as were in force when the Constitution went into operation and are not repugnant thereto, shall be and continue the law of the State until altered or repealed by the legislature. The common law prohibiting perpetuities, is in force in this State, except so far as it has been modified or repealed by the legislature by general or special act. In the second volume of Bouvier's Law Dictionary, a perpetuity is defined to be "Any limitation tending to take the subject of it out of commerce for a longer period than a life or lives in being, and twenty-one years beyond; and in case of a posthumous child, a few months more, allowing for the term of gestation. Randall on Perpetuities, 48: or it is such a limitation of property as render it unalienable beyond the period allowed by law, Gilbert on Uses, by Sugden, 260, note." See also *Scattergood v. Edge*, 12 Mod. 278; Randall on Perpetuities 49; Cruise's Digest tit. 32, c. 23; 1 Supp. to Ves. Jr. 406; 2 Ves. ch. 357; 3 Saunders 388 h. note; Com. Digest, Chancery, 4 G. 1; 3 Chan. Cas. 1; 2 Bouv. Inst. n. 1890—All of which are cited by Bouvier. In the case of *Adams v. Alvin Perry*, 43 N. Y. 487, it was *held* that a bequest to trustees of personal estate to invest and re-invest and pay over the income to an incorporated academy forever, is void under the statute of perpetuities. In New York, there is a statute against perpetuities, but is not different in principle from the common law as to prohibiting perpetuities. It may be that if said sixth bequest was not void for the reasons hereinbefore stated, and it were admitted that the *cestui que trust* was sufficiently ascertained to be "The Mount Wood Cemetery Association," then that still, said sixth bequest or clause of said will would be void at common law, as tending to create a perpetuity. But I do not now decide that question, as it is immaterial under the view already taken. *Thomas v. Shakespear,*

1876.
June Term.

Knox
v.
Knox's Exors.

62 Eng. ch. 399; *Carne v. Long*, 63 Eng. ch. 75. 2 Redfield on Wills ed. of 1866, p. 821, note, and ed. of 1870, p. 546, note. *Lloyd v. Lloyd*, 2 Simons, N. S. 255; *Ricard v. Robson*, 31 Beavan 244; *Fowler v. Fowler*, 33 Beavan; *Hare v. Osborn*, Law. R. 1 Eq. Cas. 585. *Fisk v. Attorney General*, L. R. 4 Eq. Cas. 521. It will be seen by said sixth bequest in connection with the seventh, that in addition to giving the property expressly to the trustees, creates an active trust in them, and their successors.

For the reasons herein stated, the decree of the circuit court of the county of Ohio, rendered in this cause on the twenty-third day of January, 1875, must be affirmed with costs and $30 damages.

Moore and Green, Judges, concurred.

DECREE AFFIRMED.