In the Matter of the Estate of Prosper A. Pierce.

In the Matter of the Estate of Prosper A. Pierce.

*December 18, 1882 — January 9, 1883.*

*(1) When functions of executor cease.    (2) Will construed.*

1. Under sec. 3850, R. S., the functions of an executor, as such, and his right to the possession of the real estate of his testator, cease at the end of six years after the granting of letters testamentary.

2. By his will a testator gave to his wife a life estate in his dwelling house and one acre of land on his farm, "and $250 per year during her natural life, the payment of said annuity to be made to her, first, six months after my decease $125, and $62.50 quarterly thereafter; all of said annuity to be taken from the proceeds of my said farm each and every year." He also gave to other devisees, "all the rest, residue and remainder of my personal estate at the time of my decease, and of my real estate at the time of the decease of my said wife." No life estate in the residue of the realty was devised, and the will contained no other devise of real estate than those above mentioned; nor did it provide, in terms, who should be entitled to the possession of the real estate, except that devised to the widow. *Held:*

(1) That the residuary devisees took at once, on the death of the testator, all the real estate not devised to the widow (the farm being charged with the payment of the widow's annuity), and also that devised to her, subject to her life estate therein.

(2) The proceeds of the farm for any given year constitute the fund out of which the annuity for that year is to be paid. The rents are not to be accumulated for the payment of any possible deficiency.

APPEAL from the Circuit Court for *Rock* County.

In the Matter of the Estate of Prosper A. Pierce.

Prosper A. Pierce died testate March 18, 1875. His will was duly proved, and the appellant, *Stephen C. Pierce*, qualified as sole executor. On an accounting in the county court in August, 1880, there was found in the hands of the executor belonging to said estate (the debts against the estate all having been paid) the sum of $715.34, of which $331.34 was personal estate, and the remaining $384 was rent from the farm mentioned in the will of the deceased. The county court made an order distributing the $331.34 among the legatees entitled thereto under the will, but refused to order distribution of the $384. That court also refused to assign the real estate mentioned in the will to the devisees therein named. The executor was ordered to pay certain taxes and the annuity then due the widow under the will out of the $384, and to invest the residue. From that portion of the order refusing to distribute the surplus rent, and to assign the real estate, one of the devisees appealed. The circuit court reversed the portion of the order appealed from, and directed the county court to make such assignment of the land charged with the annuity, and such distribution of the surplus rent. From such order of the circuit court the executor now appeals.

For the appellant there was a brief by *Winans & Fethers*, and oral argument by *Mr. Winans*. To the point that the will creates a trust and, no trustee being named, the executors are trustees by implication, and are to execute the trust, they cited: *Batchelder v. Batchelder*, 20 Wis., 452; *Dorr v. Wainwright*, 13 Pick., 328; *Dole v. Johnson*, 3 Allen, 364; *Carson v. Carson*, 6 id., 397; *Saunderson v. Stearns*, 6 Mass., 37; *Sawyer's Appeal*, 16 N. H., 459; *Howard v. Am. Peace Society*, 49 Me., 288–306; *Lansing v. Lansing*, 45 Barb., 182. As to the words, "at the death of my wife," see *Livingston v. Greene*, 52 N. Y., 118, 123.

*A. Hyatt Smith*, for the respondent.

In the Matter of the Estate of Prosper A. Pierce.

· Lyon, J. The determination of this appeal turns upon the construction of the following clauses in the will of the testator, Prosper A. Pierce:

"*First.* After the payment of all my just debts and funeral expenses, I give, devise, and bequeath to my wife, Amanda Pierce, the sole use and control of my stone dwelling-house, and one acre of ground on which the same is situated, being on my farm in the town of Janesville, in said county of Rock, and two hundred and fifty dollars ($250) per year during her natural life, the payment of said annuity to be made to her, first, six months after my decease, $125, and $62.50 quarterly thereafter; all of said annuity to be taken from the proceeds of my said farm each and every year."

"*Sixth.* I give, devise, and bequeath to my two sons, *Stephen C. Pierce* and William H. Pierce, and my daughter-in-law, *Anna E. Pierce*, wife of George M. Pierce, and all of her children who may be living at the time of my decease, all the rest, residue, and remainder of my personal estate at the time of my decease, and of my real estate at the time of the decease of my said wife, Amanda Pierce; two thirds of the same to be equally divided between my said sons, *Stephen C.* and William H., and the remaining one third to be equally divided between the said *Anna E. Pierce* and her children, share and share alike; the share of the said children to be held in trust for them during their minority by their mother, *Anna E. Pierce.*"

"*Seventh.* I hereby nominate and appoint my two sons, *Stephen C.* and William H., the executors of this, my last will and testament, and I hereby authorize and empower them to compound, compromise, and settle any demand against or in favor of my said estate."

The county judge held, in effect, that under these clauses the executor was entitled to the possession of the land, in trust, to pay the widow of the testator out of the rents

thereof the annuity given her by the will, and that he should retain the surplus rents, in trust, as a fund out of which any deficiency in the rents to pay the annuity in any year should be made good. Hence, he refused to distribute such surplus, or assign the land to the devisees thereof named in the will. The circuit judge held that the estate of such devisees was vested; that they were entitled to the possession of the land, subject to the annuity charge, at once; and that the surplus rents in any year were subject to immediate distribution among them.

We are to determine which of these opposing constructions must prevail. It will be observed that in the sixth paragraph of his will the testator bequeaths and devises to the persons tnerein named all the rest, residue and remainder of the personal estate of the testator at the time of his decease, and of his real estate at the time of the decease of his said wife. The will contains no other devise of real estate, except that in favor of the testator's wife, found in the first paragraph thereof. It does not provide in terms who shall be entitled to the possession of the real estate, except the house and acre of land devised to the widow for life. No life estate in the residue of his land is devised, and no trustee is named or provided for to hold the land during her life. These omissions have produced this controversy.

The testator, by his will, did not appoint the persons named therein as executors, or either of them, or any other person, trustees or a trustee, to hold during the life of his widow the land devised by him, or any part thereof. Hence, whatever may be the tenure of such land, it cannot be held that the appellant is a trustee in respect thereto. Neither can it be held that the executor, *virtute officii*, is a trustee to hold possession of the land devised during the life of the testator's widow. The statute (R. S., 949, sec. 3850) provides that the time for the settlement of an estate shall not be extended beyond six years after the granting of letters testa-

mentary. In this case such letters were granted to the executor in May, 1875, and the judgment of the circuit court was rendered in December, 1881. Hence, at the time of the rendition of such judgment, the functions of the executor, as such, had ceased. Several cases were cited by the learned counsel for the appellant to show that the executor is a trustee by implication in cases like this. But all of these cases relate to personal estate alone, and none of them were decided with reference to a limitation statute like ours. We are clearly of the opinion that whatever possessory right the executor may once have had to the land, *virtute officii,* that right was determined by the statute before the judgment was rendered from which this appeal is taken.

This brings us to the principal and the most difficult questions in the case, which are: In whom is the title to the land in controversy during the life of the testator's widow? and who is entitled to the possession thereof since the functions of the executor ceased? In terms, the testator devised a remainder to the devisees named — the language of the will being that they take the land at the death of his wife. But the will does not expressly provide for any precedent life estate. If, therefore, it is held that the devisees do not take until the death of the testator's widow, it will follow that the estate for her life which is not devised, and the surplus of the rents and profits thereof, after paying the widow's annuity, are intestate estate, and go to the heirs at law of the testator. It appears in the will itself that he had a son — George M. Pierce — who, presumably, is still alive, who is not named as one of the devisees. If the estate for the life of the widow does not pass by the will, he will share in it, and, consequently, in the surplus rents and profits thereof. Whether or not the testator left other heirs not named in the will does not appear. It is the duty of the court to struggle against a construction of the will which will lead to such a result. It is provided by statute that "every de-

vise of land in any will shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate." R. S., 649, sec. 2278. We understand this to be the rule of construction without the statute, but the statute emphasizes the rule.

Had the will expressly created a precedent estate during the life of the widow, or a power in trust over the land devised during her life, we should have no difficulty in holding that the devisees take only a remainder to vest at the death of the widow. Similar language was so construed in *Livingston v. Greene*, 52 N. Y., 118. But in that case a life estate was devised to the widow, and undoubtedly the language of the will was properly construed. Had the testator intended to create a power in trust over his land for the benefit of his widow, it is fair to infer that he would have done so in express terms, and that he would have appointed a trustee of such power. He did neither. The will itself contains two clauses, in each of which, by the use of apt and proper words, he appointed a trustee for certain minor legatees and devisees named in the will. The sixth clause above quoted is one of these. In view of these intelligent provisions, it seems almost incredible that he could have intended to create an express trust, or a power in trust, which would postpone, until the death of his widow, the estate of his devisees, without making any provision whatever concerning the precedent estate.

In the first paragraph of the will the testator devised to his wife a life estate in one acre of ground, and the dwelling-house thereon. Of course all that the residuary devisees named in the sixth paragraph could take in such real estate was the reversion at the death of the wife. All of the residue of his land stood charged with the payment, out of the rents thereof, of the widow's annuity. So, as to such residue, the devisees could not take an absolute, unincum-

bered title until the death of the widow. Thus we find a reason why the testator may have used the words "at the time of the decease of my said wife," and still not have intended that his devisees should take no estate whatever in the land until her decease. He may have intended thereby that they should not, until that time, take the estate free from the life estate of the widow in a part of it, and the annuity charge in her favor on the residue. For reasons already stated, we incline to the opinion that this is the real significance of the words above quoted, and that the testator intended to vest the estate in the devisees at once, subject only to the life estate and annuity charge created by the first paragraph of his will. The truth of this proposition is not very clear to our minds. We can scarcely say that we are satisfied it is the correct view of the testator's intention. But this view impresses us with sufficient force to prevent us from saying it clearly appears that the testator intended to devise only the reversion of the estate after the death of his wife. Because we cannot say this, and because there is no disposition in the will of any precedent life estate (which otherwise would remain intestate estate), the statute above quoted commands us to hold that the testator has by his will devised all of his estate. And inasmuch as the devisees named in the sixth paragraph are the only residuary devisees named in the will, it must be held that they took at once, upon the death of the testator, all the estate not devised in the first paragraph, as well as the reversion of the estate therein devised.

We are further of the opinion that the testator did not intend that surplus rents should be accumulated with which to meet any possible future deficiency in the rents to pay the annuity. The provision is that the annuity shall be taken from the proceeds of the testator's farm "each and every year." This cannot be construed to mean that the annuity should be paid each and every year from the pro-

In the Matter of the Estate of Prosper A. Pierce.

ceeds of the farm, because he had previously provided that the same should be paid in quarterly instalments. We think the true meaning of the language employed is that the proceeds of the farm for any given year is the fund out of which the annuity for that year is to be paid; and that the will makes no provision for the payment of any possible deficiency.

Although the questions involved in this appeal are interesting and may become important, yet we do not regard our determination of them, as very important to the parties affected by this proceeding. The land charged with the annuity consists of a farm of 190 acres in and adjacent to the city of Janesville. It is scarcely conceivable that, under proper management, it can ever fail to produce sufficient rents and profits to pay the annuity. In a certain sense the devisees will hold the same in trust for the payment of the annuity out of the proceeds thereof, although not in the sense which will authorize the appointment of a trustee in the first instance. But if, through any mismanagement or fraud, the rents and profits of the land become insufficient to pay the annuity, and default be made in such payment, a court of equity has ample power, and in a proper proceeding will freely exercise it, to appoint a receiver of the land charged, and sequestrate the rents and profits thereof to the payment of the annuity.

*By the Court.*— The judgment of the circuit court is affirmed. The costs in this court will be paid out of the estate.

CASSODAY, J., took no part.