HERBERT LINTON *et al.* *v.* ROSE LINTON *et al.*

(No. 7665)

Submitted February 27, 1934.   Decided March 13, 1934.

*McCamic & Clarke, Jay T. McCamic* and *W. R. Tinker, Jr.,* for appellants.

*A. C. Schiffler* and *A. E. Bryant,* for appellees.

MAXWELL, JUDGE:

From a decree directing partition of land the defendants appeal. By demurrer and answer they take the position that title to the property sought to be partitioned is not before the court.

The land in question was the homestead of Isaac J. Linton, deceased. Pertinent provisions of his will, probated March 6, 1908, are as follows:

"First. I direct my executor hereinafter named to pay all my just debts and funeral expenses, as soon as convenient after my decease.

Second. I give, devise and bequeath to my beloved wife Margaret Ellen Linton, my farm containing about 169 acres situate in Richland District in Ohio County, West Virginia, and known as the 'Warden Farm', together with all the live stock, farming utensils, household goods and other personal property used on and about said farm, to be held occupied, used, controlled and enjoyed by her during her natural life.

Third. I give, devise and bequeath to my executor hereinafter named all my estate real and personal, subject to the bequest hereinbefore made to my said wife, and direct him to dispose of all thereof, not included in said bequest, to my wife, at such times and on such terms as in his judgment will bring the most money, after paying all my just debts, funeral expenses and the expenses attending the settlement of my estate I direct him to pay one-third of the proceeds thereof, then in his hands, to my said wife and divide the remainder thereof among my twelve children, namely: Mary Elizabeth Clouston, wife of William C. Clouston, William Lee Linton, Alice Belle Linton, Jessie May DeVinney, wife of Charles DeVinney, Rose Ella Linton, Kate Rebecca Linton, Isaac Jackson Linton, Joseph Robinson Linton, Isa Matilda Linton, Margaret Estella Linton, Minnie Grace Linton and Lily Rosanna Linton, share and share alike.

Fourth. After the death of my said wife I direct my executor sell my said farm and all other property of every kind belonging to my estate then remaining, and after paying all costs and expenses attending the settlement of my estate to divide the re-

mainder of the proceeds of said sale among my said twelve children share and share alike.

Fifth. I hereby nominate and appoint I. F. Jones of Elm Grove, West Virginia, as executor of this my last will and testament and give him full authority as such executor to sell and convey all my real estate under the provisions hereof.''

The executor, I. F. Jones, now deceased, was succeeded by George J. Rogers, administrator with the will annexed, who is not a party to the suit. It is because of his absence as a party that the defendants say the title is not before the court. Thus are presented the legal queries: First. Did the will vest the legal title of the 169 acre farm in Jones, executor? Second. If so, where is the title now? The plaintiffs take the position that the title did not become vested in the executor; that the will created in him a mere power of disposition, not coupled with an interest; that upon the death of the widow the heirs became seized of the estate in its entirety. The defendants say that the executor was vested by the will not only with power of disposal but with title to the property; and that title is now in the administrator, *c. t. a.*

''Where a testator devises land to his executors to sell, the executors take a fee simple estate in the lands. But where a testator devises, that his executor shall sell his land, or that his lands shall be sold by his executor, or if he devises his lands to be sold by his executor, no estate is thereby conferred on the executor; but he has merely a power to sell.'' *Milhollen* v. *Rice,* 13 W. Va 510, 534. This is the general rule. 4 Kent's Commentaries (14th Ed.), p. 372; 11 Am. and Eng. Ency. of Law (2d Ed.), p. 1035.

We are of opinion that the will of Isaac J. Linton vested in his executor not a mere power of disposal, but a power coupled with an interest; that it vested him with legal title of the remainder of the 169 acres after the life estate of the widow was carved out. Paragraph 2 of the will gives to the widow a life estate in the farm and the personal property which went with it. Paragraph 3 devised and bequeathed all of the testator's estate, both real and personal, to the executor, subject only to the life estate which had been given to the widow. It also directs the executor to make sale of all the

property exclusive of the gift to his widow for her life, to pay the debts, and to divide the residue of the proceeds among testator's widow and children. Item 4 directs that after the widow's death the executor shall sell the farm and all other remaining property, and, after paying costs and expenses, divide the residue among the children of the testator. This analysis develops a logical sequence, and harmonizes with what seems to have been the intention of the testator that title to his property should not be vested directly in his heirs. That he should have had such desire and intent is readily understandable in the light of the fact of his unusually large family. The plan he adopted would tend to avoid confusion.

Now, as to the second query, *supra.* The executor having died, did the title which he had to the farm under the will become vested in the administrator, *c. t. a.,* who succeeded him? By the terms of the will, title by descent was broken. The legal title, in trust for specific purposes, was placed in the executor. The heirs were deprived of it. The death of the executor did not destroy the trust, as the death of a trustee under a deed of trust does not destroy it. The trust created by the will not being destroyed, the legal title must find repose in some one with power to execute it. Conditions might arise where a court of equity would appoint a trustee or commissioner to execute such trust, but the orderly and logical way is for those duties to be discharged by the administrator, *c. t. a.* This was not so at common law. See extended note to *Crouse* v. *Peterson,* (Cal.) 62 P. 475, 80 Am. St. Rep. 89, 102. But modern statutes dealing with the subject are more liberal. Our statute, Code 1931, 44-8-1, provides:

> "Real estate devised to be sold shall, if no person other than the executors be appointed for the purpose, be sold and conveyed, and the proceeds of sale, or the rents and profits of any real estate which executors are authorized by the will to receive, shall be received by the executors who qualify, or the survivor of them. If none qualify, or those qualifying die, resign, or are removed before the trust is executed or completed, the administrator with the will annexed shall sell or convey the lands so devised

to be sold, and receive the proceeds of sale, or the rents and profits aforesaid, as an executor might have done.''

This statute stands today in substance as derived from Virginia at the time of the formation of this state. We find a pertinent discussion of the statute in *Bell* v. *Humphrey,* 8 W. Va. 1, 23. The will there involved contained a specific devise of real estate to the executors with power of disposition thereof and of distribution of proceeds of sale. The court said: ''If the executors unnecessarily delayed the sale or refused to make sale, it was competent for either of the devisees, or all of them, to file a bill to compel a sale and the execution of the trust according to the general intention of the testator. This was never done and the title of the executors, and their right to the possession of the land had not been divested at the commencement of this suit. According to my understanding of the intention of the testator, as disclosed by the will and the law applicable thereto, the surviving executor Vance was, at the institution of this suit, not only invested with the legal title, in fee simple, in trust, to the land in controversy, but was also entitled to demand and have of the defendant Humphrey the possession thereof. The executor, Vance, having died and this suit having been revived in the name of the present plaintiff, as the administrator *de bonis non* of Henry Bell deceased, the question arises whether after the present plaintiff qualified as administrator *de bonis non,* as aforesaid he became invested under the law with the right to prosecute the suit to final determination and recover the land from what appears in the record. I think there can be no doubt upon this subject. See section one of chapter eighty-six of the Code West Virginia, Code Virginia, 1859, page 598. See also the opinion of Judge Moncure in case *Mosby's Admr.* v. *Mosby's Admr.,* 9 Gratt. 600.'' Thus we are led inevitably to the conclusion that in the absence of the administrator, with the will annexed, the title of the farm was not before the court.

Query: If the administrator be made a party defendant to the suit and the title of the farm thus be brought in, what right will the plaintiffs have even then to demand partition? The right of inheritance was disrupted by the devise which

was to the executor and not to them. In the absence of averment and proof of dereliction on the part of the administrator, or of some other circumstance presenting a distinct ground of equity jurisdiction, what right do beneficiaries of this trust have to come into equity for any purpose incident to the trust? These matters are not now before the court, but, being of vital importance, we are constrained to call attention to them.

We reverse the decree of the trial chancellor, sustain the demurrer to the bill, and remand the cause to the circuit court with leave to the plaintiffs to amend their bill, and for further proceedings.

*Reversed and remanded.*