HOWARD HARDESTY, *Receiver, etc. v.* FAIRMONT SUPPLY COMPANY

(CC 639)

Submitted February 18, 1941. Decided March 15, 1941.

*Herschel H. Rose, Jr.,* and *Meredith & Bell,* for plaintiff.
*Tusca Morris* and *Robert C. Morris,* for defendant.

Lovins, Judge:

The Circuit Court of Marion County has certified certain questions arising upon its action in overruling a demurrer to a bill in equity seeking specific performance of a contract to purchase real estate. The demurrer is based upon the ground that the bill shows on its face that plaintiff is unable to convey good title.

The following facts are alleged in the bill: At the time The National Bank of Fairmont became insolvent and Robert C. Miller was appointed its receiver, it was the owner and holder of a note of the Wrightwheel Development Company in the amount of $18,700.00, secured by two deeds of trust. After obtaining judgment on the note by notice of motion for judgment, the receiver instituted a creditor's suit against the Wrightwheel Company to enforce the lien of its judgment against real estate owned by the company. At a special commissioner's sale, pursuant to said suit, Robert C. Miller, receiver, purchased four parcels of real estate, designated in the commissioner's report as parcels 5, 6, 7 and 8, which parcels were included in one of the deeds of trust executed by the Wrightwheel Development Company to secure its note, paying for said parcels in cash. It does not clearly appear that the purchase price was paid out of funds belonging to the insolvent banking association. After the confirmation of the sale, the special commissioner conveyed the parcels to the receiver by four deeds, which are unambiguous and identical as to the description of the grantee and also as to the granting clause. The grantee is described as "Robert C. Miller, Receiver of The National Bank of Fairmont, an insolvent

national banking association, party of the second part." The granting clauses of the deeds are "* * * doth hereby grant and convey unto the said party of the second part * * *." Miller died in 1937, and Howard Hardesty, plaintiff herein, was appointed receiver of the insolvent bank in his stead. Thereafter, Hardesty, at the direction of the Comptroller of the Currency, sold at public auction all real estate owned by his trust, including the parcels conveyed to Robert C. Miller, receiver, etc., at which sale defendant herein, Fairmont Supply Company, bid for the four parcels hereinbefore mentioned, which offer was accepted, subject to approval of the Comptroller and the Circuit Court of Marion County. An agreement to purchase the four parcels of land was executed by the plaintiff and the defendant and upon the approval of the court and the Comptroller, Hardesty offered to convey the four parcels of real estate to the Fairmont Supply Company, which offer was rejected. This suit was then instituted against the Fairmont Supply Company, as sole defendant, by Hardesty, receiver, to compel the Fairmont Supply Company to perform the agreement to purchase.

In support of the demurrer, defendant contends that the bill of complaint shows on its face that plaintiff does not have legal title to the four parcels hereinbefore mentioned and that the conveyance thereof operated to vest title to the real estate in Robert C. Miller, individually, and that the words "Receiver of The National Bank of Fairmont, an insolvent national banking association" are *descriptio personae* of the grantee; that the title to the real estate did not pass to Miller's successor by operation of law or any instrument; that the deeds are plain and unambiguous; that the construction thereof cannot be resorted to to explain any trust estate, and that the heirs-at-law of Robert C. Miller are now the owners of the legal title to the real estate conveyed thereby. The Circuit Court of Marion County overruled the demurrer, and on the joint application of the parties hereto certified the question thus raised to this Court.

In order that the questions involved in this certificate may be properly discussed, it is necessary to consider the

effect of the appointment of a receiver for a national banking association by the Comptroller of the Currency, as well as the authority and powers of the receiver so appointed.

When a national bank becomes insolvent and the Comptroller of the Currency takes charge of its affairs and appoints a receiver, all its assets pass to the possession and control of the receiver in trust to reduce the same to money and apply them as directed by the National Banking Act. U. S. C. A. Title 12, Sections 192 and 194; *Anderson* v. *Cronkleton* (C. C. A. Neb. 1929), 32 Fed. (2d) 170. The receiver of a national banking association has the power to purchase real estate under the direction of the Comptroller of the Currency, when such is necessary to protect the assets of the insolvent bank. U. S. C. A. Title 12, Sections 198, 199 and 200.

An insolvent national bank does not lose its corporate identity by the appointment of a receiver. *The First National Bank of Bethel* v. *The National Pahquioque Bank,* 14 Wall. 383, 20 L. Ed. 840. It may still enter into transactions not forbidden by law. "It is clearly, we think, the intention of the law, that it should continue to exist as a person in law * * *." *Chemical National Bank* v. *Hartford Deposit Co.,* 161 U. S. 1, 40 L. Ed. 595, 16 Sup. Ct. 439; *Hiatt* v. *Warren* (5 C. C. A.), 44 Fed. (2d) 313; *Neely* v. *Planters National Bank of Clarksdale, Miss.,* D. C., 48 Fed. (2d) 266. It would seem that the powers of a receiver of a national banking association and his capacity to control and deal with the assets thereof are well and fully defined.

However, another question now arises: Does the law of this jurisdiction apply in the construction of a deed conveying land to the receiver of a national bank? It seems that the answer to this question is largely determinative of the result herein. The alienation and transfer of real estate is governed by the law of the state in which the land is located. *Olmsted* v. *Olmsted,* 216 U. S. 386, 54 L. Ed. 550, 30 Sup. Ct. 292, 25 L. R. A. (N. S.) 1292; *In re Barnett* (2 C. C. A.) 12 Fed. (2d) 73; *Irving Trust Co.* v. *Maryland Casualty Co.,* (2 C. C. A.) 83 Fed. (2d) 168, 111 A. L. R. 781. "The nature of the interest created by the conveyance is

determined by the law of the state where the land is situated." Restatement of the Law, Conflict of Laws, Section 221. Generally, as to the legal effect and interpretation of words used in an instrument conveying land, see Conflict of Laws, *supra*, Sections 214, *et seq*. It is no longer open to question that the legal effect and interpretation of words used in an instrument conveying land situate in this state are to be measured by the laws of this jurisdiction. *Klinck* v. *Price*, 4 W. Va. 4, 6 Am. Rep. 268. This principle is recognized and discussed in the case of *Wick* v. *Dawson*, 42 W. Va. 43, 24 S. E. 587. This being true, we look to the laws of this state to determine what title Miller took by the conveyance to him as "receiver of the National Bank of Fairmont, an insolvent National Banking Association."

It is a well established principle of law that a writing, if not ambiguous, speaks for itself. Parol testimony is not admissible to show the intention of the parties making it. *Uhl* v. *Ohio River Railway Co.*, 51 W. Va. 106, 41 S. E. 340; *Collins* v. *Treat*, 108 W. Va. 443, 152 S. E. 205; *Central Trust Co.* v. *Virginia Trust Co.*, 120 W. Va. 23, 197 S. E. 12. Applying this principle to the deeds before us, they alone, construed under the law of this jurisdiction, determine the status of title to the land in question, since no ambiguity appears therein or could be asserted.

In this state it has been held that where a conveyance is made to a person whose name is followed by an official title or name of office, the title or office is merely *descriptio personae* of the grantee and title vests in the grantee individually. *Hyman* v. *Swint*, 94 W. Va. 627, 119 S. E. 866; *Donahoe* v. *Rafferty*, 82 W. Va. 535, 96 S. E. 935. See also, *Pfeiffer* v. *Rheinfrank*, 2 App. Div. 574, 37 N. Y. S. 1076. We see no reason to change the rule announced in the cases in *Hyman* v. *Swint* and *Donahoe* v. *Rafferty*, *supra*.

Counsel for defendant refer in their brief to the opinion of this Court in the case of *Linton* v. *Linton*, 114 W. Va. 711, 173 S. E. 778. The opinion in the *Linton* case dealt with powers of an executor and an administrator with the will annexed, the executor having power to sell and distribute proceeds to named beneficiaries, and not with the authority and powers of a receiver of an insolvent national bank and his successor.

In the case of *Rinehart, Receiver,* v. *Ireland,* 120 W. Va. 599, 199 S. E. 871, also cited by counsel, this Court had under consideration the question of the powers of the receiver of a state bank. The statute which measures the power and authority of the receiver of a state bank is not in terms the same as the statute which defines the powers and authority of the receiver of a national bank. The law under which the receiver of a state bank operates, provides that he shall have all the powers vested in special receivers by general law, thus giving the receiver of a state bank appointed under Code, 31-8-32, wider powers than those given to the receiver of a national bank. The receiver of a national bank is an agent whose authority is limited by law. *Whelan* v. *Blankenbeckler* (5 C. C. A.), 87 Fed. (2d) 81; *Scott* v. *Armstrong,* 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059.

Miller had the power to purchase the real estate here in question, if the protection of the assets of the insolvent association required the same. However, if he used the funds of his trust in purchasing such real estate, he did not have authority to take title to the property in his own name. Since Miller was apparently acting in a fiduciary capacity as receiver of the bank, he exceeded his authority in accepting the deeds herein mentioned, and the legal title to the real estate vested in him individually. We are not aware of any statute which authorizes the receiver of a national banking association to take title from his deceased predecessor by operation of law. There being no such statutory provision, the legal title, upon the death of Miller, passed to his heirs by the laws of descent prevailing in this jurisdiction.

We, therefore, reverse the ruling of the Circuit Court of Marion County without prejudice to the rights of any person who may assert ownership of the four parcels of land mentioned herein.

*Reversed.*