JOHN BALL, JR., *et al.*

*v.*

ANDREW BALL, *et al.*

(No. 10434)

Submitted January 15, 1952.   Decided February 12, 1952.

Lovins, Judge, dissenting

*Crockett & Tutwiler, J. Strother Crockett,* for appellant.

*Floyd M. Sayre, Grove D. Moler, R. D. Bailey, Sr.,* for appellees.

Riley, President:

John Ball, Jr., and Ruth Ball Grayson, children and sole heirs at law of John Ball, Sr., deceased, brought this

suit in equity in the Circuit Court of Wyoming County, West Virginia, against Andrew Ball and others, (including all of decedent's next of kin), The McDowell County National Bank, a corporation, executor under the last will and testament of decedent, and The McDowell County National Bank, a corporation, trustee under decedent's last will and testament, praying that the trust purported to be established be declared void, as being indefinite, uncertain, and incapable of being executed by the court; and that by reason thereof testator's real estate and personal property passed by operation of law to the plaintiffs jointly.

The McDowell County National Bank, both as executor and trustee, filed an answer to plaintiffs' bill of complaint, averring that testator's will is clear and unambiguous, and that under its terms the testator's real estate was devised to the bank to be sold and the proceeds thereof expended in the manner set forth and provided in the will. To this answer the plaintiffs, John Ball, Jr., and* Ruth Ball Grayson, filed a replication denying the allegations of the answer, and averring that Martha Ball and Clara Ball Rosenberger, purported beneficiaries of the trust under consideration, had by deeds conveyed their interests under the will to the plaintiff, John Ball, Jr., and had no interest in the controversy in this suit, to which replication The McDowell County National Bank, both as executor and trustee, by its answer and rejoinder denied the right of Martha Ball and Clara Ball Rosenberger, to transfer their respective interests to the plaintiff, John Ball, Jr.

The trial court entered the final decree complained of in plaintiffs' favor, which decree adjudicated that plaintiffs, John Ball, Jr., and Ruth Ball Grayson, inherited the estate of testator by reason of their being his children, heirs at law, and next of kin, subject, however, to any and all legal debts against the estate at the time of testator's death.

The McDowell County National Bank, as trustee under testator's will, prosecutes this appeal to the decree of the

Circuit Court of Wyoming County, assigning as error the holdings of that court: (1) That John Ball, Jr., and Ruth Ball Grayson are testator's "nearest of kin" within the meaning of the will, after the beneficiaries of the trust therein have departed this life; (2) that John Ball, Jr., and Ruth Ball Grayson were vested with the legal title to all of testator's real estate and personal property; (3) that Clara Ball Rosenberger and Martha Ball, or any beneficiary under the purported trust created under the will, could sell their rights under the purported trust for a monetary consideration; and (4) that the court erred in failing to decree that all of decedent's property real and personal passed in trust to appellant, The McDowell County National Bank, to be administered as provided in decedent's last will and testament.

The will reads as follows:

"I, John Ball, the undersigned, after revoking all former wills made by me, make this my Last Will, on this, the 5th day of August, 1941.

"I appoint the McDowell County National Bank of Welch, West Virginia, as my Trustee and Executor, which shall take charge of my estate and dispose of it in the following manner, at my death:

"My household goods and tools shall become the property of John Ball, Jr., and his wife.

"My executor shall sell items of my property from time to time, as is thought most expedient, and pay my debts, funeral expenses, erect a monument over me like that of my wife; they shall hold items of my property from time to time that has the best earning capacity; they may hire some party to collect my rentals and keep my property in repair to the best advantage; they are authorized to borrow to pay taxes, interest, and sinking fund on debts, as may be required. After two months and a fraction of a month, on the last day of each succeeding month they are to pay John Ball, Jr., Forty Dollars ($40.00) per month; to his wife Mae Ball, Thirty Dollars ($30.00) per month, as long as she remains his wife or widow; to my daughter, Ruth Ball, Thirty

Dollars ($30.00) per month; to my Sister Martha Ball Thirty Dollars ($30.00) per month; to my sister Clara Ball, Fifteen Dollars ($15.00) per month. In the event of the death of any of the above named parties, their share of the above allowances shall be divided among the others that are living, so as to keep the payments up to the amount of $145.00 per month. It is my desire that items of my property, not required to meet the above payments, and which have earning capacity, shall be carried in my name on the land books for taxation until such time as their value may be required to meet the above payments. My Trustee shall do other things to carry out the intention of this Will, as may be deemed expedient at the time; they shall make their settlements with the proper authorities and receive their pay for services according to the law regulating matters of that kind.

"If any beneficiary of this will make claim against my estate for services rendered, rentals collected, or any other cause whatsoever, they shall bar themselves from collecting the above allowance of Thirty ($30.00) and Forty ($40.00) Dollars per month to the extent of the claim made and proved by them.

"Any deed that I have made, or may make, shall be valid and have priority over this Will, provided it is recorded within three months from the probation of this Will.

"The end of closing up of my estate shall be at a time when all the beneficiaries named above are dead; or at a time when the funds arising from the sale of my property have been exhausted. If any funds remain in the hands of my executor at that time, it shall be disbursed equally among my nearest of kin."

The decedent, John Ball, Sr., died on August 31, 1949, at Pineville in Wyoming County. His will having been admitted to probate by the County Court of Wyoming County, the appellant, The McDowell County National Bank, qualified as executor and trustee, and gave bond as such executor and trustee, and is now acting in such capacities.

From the pleadings it appears that Mae .Ball, the wife of John Ball, Jr., died prior to testator's death, and that John Ball, Jr., acquired the interests, if any, of Clara Ball Rosenberger and Martha Ball prior to the date of the entry of the final decree; that testator died unmarried, seised and possessed of the real estate and personal property described in the pleadings, leaving surviving him, as his sole heirs at law, children and next of kin, the plaintiffs, John Ball, Jr., and Ruth Ball Grayson; and that The McDowell County National Bank, executor and trustee, does not have any of decedent's personal property and real estate, except such as it has as executor and trustee.

The construction of testator's will is not without difficulty. We say this because the testator throughout his will used the words "trustee" and "executor" interchangeably, and because, in addition, the will does not in specific terms devise and bequeath the title to testator's real and personal property to The McDowell County National Bank, either as trustee or as executor. If the circuit court was correct in its ruling that the paper writing under consideration, dated August 5, 1941, was the testator's true last will and testament but that testator intended thereby to have the bank qualify as trustee and executor, with power only to pay testator's debts, funeral expenses, and erect a monument at testator's grave; and that, subject to such payments, the title to testator's real and personal property became vested in plaintiffs under the laws of intestacy, the last paragraph of the will would be rendered ineffective, which paragraph reads: "The end of closing up of my estate shall be at a time when all the beneficiaries named above are dead; or at a time when the funds arising from the sale of my property have been exhausted. If any funds remain in the hands of my executor at that time, it shall be disbursed equally among my nearest of kin."

The pertinent provisions of the will bearing on the question of construction now before us are: (1) The appointment of The McDowell County National Bank as

testator's "Trustee and Executor, which shall take charge of my estate and dispose of it in the following manner, at my death:"; (2) a direction that "My executor" shall from time to time sell items of testator's property, "as is thought most expedient"; (3) a direction that "My executor" shall from time to time hold such items of testator's property as have "the best earning capacity"; (4) a direction that "they" (evidently meaning the bank as trustee and executor) shall collect rentals from testator's real estate, keep the same in repair, and, if necessary, borrow money to pay taxes, interest and sinking fund on debts; (5) a provision for the payment of annuities in various amounts to beneficiaries named in the will, including the plaintiffs, John Ball, Jr., and Ruth Ball Grayson, totalling one hundred forty-five dollars a month, with a provision that at the death of any of the named beneficiaries the share of such deceased beneficiary shall be divided among the then living beneficiaries; (6) the general provision that "My Trustee" shall do other "things to carry out the intention of this Will, as may be deemed expedient at the time"; and (7) finally, the residuary clause that "The end of closing up of my estate" shall be when all of the named beneficiaries are dead; and "If any funds remain in the hands of my executor at that time, it shall be disbursed equally among my nearest of kin."

An initial question, not bearing on the construction of the will, is whether the beneficiaries, Clara Ball Rosenberger and Martha Ball, effectively transferred their interests in testator's estate to the plaintiff, John Ball, Jr. Though in the nature of life estates with survivorship, the various payments to the named beneficiaries are annuities, payable in monthly installments, and the fact that the payments are to be made on a monthly basis does not destroy their character as such. *Cummings* v. *Cummings*, 146 Mass. 501; *Pierce's Estate*, 56 Wis. 560; Black's Law Dictionary, 4th ed., 116; and being annuities they are mere choses in action, and as such the right to the payments may be assigned or transferred. 2 Am. Jur.,

Annuities, Section 31; 3 C. J. S., Annuities, Section 7. It follows that if the construction of testator's will by the Circuit Court of Wyoming County is correct, the plaintiffs, John Ball, Jr., and Ruth Ball Grayson, have the right to the full monthly payment in the total amount of one hundred forty-five dollars; and that if the circuit court is correct, they, being the only heirs at law and next of kin at the time testator died testate, would be entitled to, and have, the fee simple interest in the real estate, as well as the full ownership of testator's personal property, subject to the right of The McDowell County National Bank to pay testator's debts and funeral expenses, and the cost of a monument, and, if necessary, the right to borrow money for such purposes.

Having thus ascertained the status of the plaintiffs in this suit, we are brought immediately to the questions involved in the construction of this will.

The primary and all-embracing rule governing the construction of a will is that the testator's intent is the controlling factor, and if that intent is expressed so that it can be ascertained from the provisions of the will itself, and is not contrary to some positive rule of law, the testator's intent will prevail. *In Re Conley*, 122 W. Va. 559, 12 S. E. 2d 49. But, as a corollary to this rule, inquiry always is not what the testator intended to express, but what the wording of the will actually does express. *Wills* v. *Foltz*, 61 W. Va. 262, 56 S. E. 473. And, of course, in the construction of a will a court should construe and consider all the provisions thereof as a whole, in their relation to each other, and in the light of the circumstances which prompted the testator to execute the will.

In appraising the question whether the circuit court was correct in decreeing that plaintiffs under the laws of intestacy, as well as by the assignments of Clara Ball Rosenberger's and Martha Ball's interests to the plaintiff, John Ball, Jr., we should, where possible to bring testator's intent into operation, give effect, so far as possible to every word and part of the will, in order to avoid the creation of intestacy, *In Re Conley, supra:* for the

law does not favor intestacy. *National Bank of Commerce of Charleston* v. *Wehrle,* 124 W. Va. 268, 20 S. E. 2d 112.

Counsel for plaintiffs in their brief cite *Barker* v. *Haner,* 111 W. Va. 237, 161 S. E. 34, and other West Virginia cases, and quote the following from points 1 and 2 of the syllabus of the last-mentioned case, which read: "In construing a will, the intention of the testator to exclude the heir from participation in any portion of his estate must convincingly appear either by the express terms, or by necessary implication". (Point 1); "'Necessary implication means so strong a probability of intention that an intention contrary to that imputed to the testator cannot be supposed. The whole will, taken together, must produce the conviction that the testator's intention was to create the estate raised by implication.' (*Bartlett* v. *Patton,* 33 W. Va. 71.)" (Point 2). In point 3 of the syllabus of the *Barker* case, the Court held that: "If there be no residuary clause in a will, the heirs at law of the testator take property, the disposition of which is void, or fails, or is otherwise incapable of taking effect, unless a contrary intention shall appear by the will."

A rule of construction ancient in the jurisprudence of the Virginias, as stated in the annotation to *Boisseau* v. *Aldridges,* 5 Leigh 222, reads: "A man can disinherit his heirs only by unmistakably giving his estate to some one else. This principle results from the nature of property; for property is the creature of law, and the law will dispose of it, unless, under the permission which the law gives the owner to make a will, he disposes of it. For this proposition, see the principal case cited in *Sutherland* v. *Sydnor,* 84 Va. 880, 883, 6 S. E. Rep. 480; *Coffman* v. *Coffman,* 85 Va. 459, 463, 465, 470, 8 S. E. Rep. 672; *Carney* v. *Kain,* 40 W. Va. 758, 820, 23 S. E. Rep. 660."

So it becomes necessary for us to ascertain: (1) Whether the words contained in the second paragraph of the will: "I appoint the McDowell County National

Bank, of Welch, West Virginia, as my Trustee and Exec-
utor, which shall take charge of my estate and dispose
of it in the following manner, at my death;" serve to
vest in the bank, as trustee, the legal title to testator's
estate, real and personal, there being in the will no spe-
cific words of devise; and (2) whether the purported
residuary clause contained in the last paragraph of the
will, in which testator designates the time for the clos-
ing of his "estate" and provides that "any funds" which
remain in the hands of "my executor at that time" shall
be disbursed equally among testator's "nearest of kin"
is to be given effect.

We are of opinion that the appointing clause contained
in the first paragraph of the will, read in connection with
the purported residuary clause, contained in the last
paragraph thereof, which we are at liberty to do, as the
testator's intent can be ascertained only from a construc-
tion of the will as a whole, serves to vest, except the
household goods and tools which were bequeathed to the
plaintiff, John Ball, Jr., and his wife, in The McDowell
County National Bank, as executor and trustee, the whole
title to testator's real and personal property, subject to
the provision as to the payment of debts, funeral ex-
penses, and the cost of a monument. The text in 54 Am.
Jur., Trusts, Section 65, reads: "Where a testamentary
trust is intended to be created, although words of devise
in trust are lacking, the court will, nevertheless, honor
and enforce the trust. (Note 5). For example, a clear
indication in a will that trustees are to have charge of
what remained of an estate after payment of specific
legacies will raise a trust in real estate within such resi-
due, although there has been no specific devise thereof
to the trustees." (Note 6). Under note 5 the text cites
*Sherlock* v. *Thompson*, 167 Iowa 1, 148 N. W. 1035, Ann.
Cas. 1917A 1216; and under note 6 *Booth* v. *Krug*, 368 Ill.
487, 14 N. E. 2d 645, 117 A.L.R. 1193 is cited. In the *Sher-
lock* case, cited under note 5, the testatrix bequeathed
the income of the remainder of her estate to her husband,
and after his death to her son in trust, to share the in-
come equally between them during their joint lives, the

survivor to have the whole income during his life, and, after the death of the survivor, the property to be divided among testatrix's nephews and nieces, the Supreme Court of Iowa held that the legal title vested in the husband, and on his death, leaving the son surviving, in the son as trustee, and also that the equitable estate for life did not create a merger in equity, "since to do so would bar the interest of the remainderman." And in the *Booth* case, cited under note 6 of the text, which involved a will in conformity with the statement contained in the text of 54 Am. Jur., Trusts, 65, the Illinois Supreme Court said: "The presumption against intestacy is so strong that courts will adopt any reasonable construction of a will to avoid it." In *Welch* v. *Caldwell*, 226 Ill. 488, 80 N. E. 1014, the testator clearly intended that his trustees were to have charge of what remained of his estate after the payment of specific legacies. On this basis the Court held that the will created a trust in real estate in the residue of testator's estate, although the real estate was not by express terms devised to the trustees. In *Sherwin* v. *Smith*, 282 Mass. 306, 185 N. E. 17, the Supreme Judicial Court of Massachusetts held that a trust is created where the testatrix's evident intent cannot be exercised, unless the will is construed to create a trust, a trust will be declared, notwithstanding the will contained no express direction creating a trust. In the case of *Heiseman* v. *Lowenstein*, 113 Ark. 404, 169 S. W. 224, Ann. Cas. 1916C 601, the Arkansas Court held that where an executor, as is the case in the instant will, is directed to pay specified sums in installments to named beneficiaries with a gift over on their death, and which directs the executor to close the estate as speedily as possible, creates a testamentary trust.

Unless the instant will is construed to create a trust, the last paragraph of the will providing for the closing of testator's "estate", and for the distribution of "any funds remain in the hands of my executor at that time" shall be disbursed in equal portions to testator's "nearest of kin" would be ineffective. These "nearest of kin" are not, and cannot be, the plaintiffs, who were testator's

next of kin, and heirs at law at the time of his death, because the contingent remainder will vest upon the formation of the class provided in the last paragraph of the will, and cannot vest in the members of that class until the class is created and established once and forever at the death of all of the named beneficiaries in testator's will, including the plaintiffs. We are of opinion, notwithstanding the fact that the will is ineptly drawn, that the real estate and personal property, having vested in the bank as trustee and executor, should be retained by that bank until the death of all of the named beneficiaries; and that the words "any funds" contained in the purported residuary clause of the will should be construed to mean both real and personal property. We say this because we are of opinion, following the rule governing the construction of wills which inveighs against intestacy, that the testator intended by his will to dispose of the whole of his estate; and, notwithstanding the testator through ineptitude used in the purported residuary clause the words "any funds", we are of opinion that those words should be construed in accordance with the evident intent of the testator to mean both real and personal property. In *Sims* v. *McMullan,* (Tex.), 22 S. W. 2d 313, the Court held that reference in a will to a trustee as a legatee and to "funds of estate" should be construed to include both real and personal property, "since the word 'fund' or 'funds' may mean any kind of property." 17 Words and Phrases, Perm. Ed. 820.

Counsel for plaintiffs assert that, though testator's will be construed in the foregoing manner, the residuary interest, after the lifetimes of the named beneficiaries, will not vest in testator's "nearest of kin", for the reason that the class "nearest of kin" will not be formed until the death of all of the named beneficiaries. Therefore, it is argued that the remainder provided by the purported residuary clause of the will is a contingent remainder. This position is correct, and it is on this basis that counsel assert that the residuary interest is so remote as to violate the rule against perpetuities. The rule against perpetuities had its inception in the *Duke of Norfolk's Case,*

3 Ch. Cas. 1, decided in 1682, in which the Court held that where a contingency must occur within a life in being, there can be no perpetuity rendering the devise over invalid. In that case the limitation over involved therein was held valid, since it must take effect, if at all, during the life of a person living at the time of testator's death. Later in *Stephens* v. *Stephens*, Cas. Temp. Talb. 228, decided 1736, it was held that a vesting, though postponed beyond existing lives, is valid, if the vesting occurs within twenty-one years thereafter. Still later the rule has been developed and extended so that in this jurisdiction the future vesting of an estate is valid, provided it occurs within a life or lives in being, twenty-one years, and one period of gestation thereafter. *Knox* v. *Knox*, 9 W. Va. 124; *Starcher Bros.* v. *Duty*, 61 W. Va. 373, 56 S. E. 524.

As the residuary clause of the instant will provides for the closing of decedent's estate when all of the named beneficiaries are dead, or when the funds arising from the sale of testator's property have been exhausted, the vesting in testator's "nearest of kin" must occur within a life or lives in being, twenty-one years, and one period of gestation thereafter, the rule against perpetuities is not violated.

As a threshold question counsel for plaintiffs say that the appeal was improvidently awarded, and should be dismissed. We have postponed the consideration of this question to this point, for the reason that the solution of the question necessarily depends upon the construction of testator's will.

It is asserted that John Ball, Jr., in addition to the interest which he acquired under decedent's will, having by conveyance acquired the interests of Martha Ball and Clara Ball Rosenberger, and Ruth Ball Grayson having retained the interest which she received under the provisions of the will, The McDowell County National Bank, as trustee thereunder, being the only appellant, is not an aggrieved party, and, therefore, cannot prosecute this appeal.

Reliance is had on a number of West Virginia cases, typical of which is the recent case of *Tyler* v. *Reynolds,* 121 W. Va. 475, 7 S. E. 2d 22, in which this Court on pages 477 and 478 of the official report and on page 23 of the Southeastern Reporter said: "We hold that the right of a personal representative to prosecute litigation, with regard to the estate in his charge, must be limited to those matters which affect the estate as a whole, necessarily excluding the rights of those who may be individually interested through distribution of the estate or otherwise; the rights of heirs or devisees flowing from the estate, and which accrue to them completely after the estate is settled, should be asserted and protected by them individually." In the *Tyler* case this Court, following its holding in the earlier case of *Ratliff* v. *Patten,* 37 W. Va. 197, 16 S. E. 464, held that the duty of a personal representative to carry out the intention of the testator, as disclosed by his will, "does not extend to the point where it becomes the obligation of the executor [trustee], at the expense of the estate, to protect the heir or devisee in a matter in which such heir or devisee is peculiarly interested, and *in which his right to protect his interest is open and clear.*" (Italics supplied).

On this basis plaintiffs' counsel assert that plaintiffs by assignment, as well as under testator's will, have acquired the full interest in the annuity payments amounting to one hundred forty-five dollars a month, and, as these plaintiffs are not complaining on this appeal, the trustee, The McDowell County National Bank, is not an aggrieved party and cannot complain here, and, therefore, it has no status as a party litigant in this Court. If the plaintiffs were the only parties interested in testator's estate, their position would be sound, because plaintiffs, being *sui juris,* if they had thought themselves adversely affected by the decree of the Circuit Court of Wyoming County, could and should have asserted their rights in this Court on the instant appeal. This they have not done, evidently being content with the final decree of the circuit court. Though at the time of testator's death,

plaintiffs, John Ball, Jr., and Ruth Ball Grayson, were testator's only children, heirs at law, and next of kin, if this Court had accepted plaintiffs' theory bearing on the construction of testator's will, they would have been vested with the residuary estate, subject to the payment of debts, funeral expenses, and the cost of a monument.

Under the foregoing construction of testator's will there are persons *in futuro,* composed of testator's "nearest of kin", who will or may be interested upon the happening of the contingency set forth in the residuary clause of the will and who, because their time to speak has not yet arrived, are necessarily silent in the protection of the possible interests which may vest in them at the death of all of the named beneficiaries. These interested parties certainly cannot protect themselves on this appeal; and plaintiffs not having deigned to do so by joining in the appeal of The McDowell County National Bank, the latter alone can do so. This appeal is not one solely to protect the bank's interest by way of commissions as trustee or otherwise, but the prosecution thereof is necessary, in view of plaintiffs' reluctance to do so, to protect the unnamed and yet undetermined persons who may be testator's "nearest of kin" at the time of the final distribution of the estate under the residuary clause of testator's will.

In these circumstances we are of opinion that The McDowell County National Bank, as trustee under testator's last will and testament, has a proper status in this Court; that the instant appeal was not improvidently awarded; and that it therefore should not be dismissed.

For the foregoing reasons the final decree of the Circuit Court of Wyoming County is reversed and the cause remanded to that court with direction that a decree be entered in accordance with the principles herein enunciated.

*Reversed and remanded with direction.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from the opinion of the Court. My reasons for such dissent center around the third point

of the syllabus wherein it is held that the portion of the will disposing of the major portion of testator's property operated to vest the trustee with title to such property. In my view, the will makes no disposition of testator's property, except his household goods and tools, which were bequeathed to John Ball, Jr., and his wife. The fourth, fifth, and sixth points of the syllabus, if my conclusion is correct, have no place in the opinion. I think the seventh point of the syllabus is legally correct.

It is necessary to treat the law of wills as a statutory permission for persons to alter the course of descent and distribution provided for by general statute. In this case, we have a contest with John Ball, Jr., and Ruth Ball Grayson, the son and daughter, respectively, of John Ball, Sr., on one side and the beneficiaries of an alleged testamentary trust on the other. The son and daughter assert their rights as heirs at law and distributees under the general statute and would treat that portion of the will of their father relative to a trust as failing to dispose of their father's property.

Jarman, in his excellent work on wills, states the general rules for construction of wills at page 770, Sixth Edition, Bigelow (page 1654), which reads in part as follows:

"II. That technical words are not necessary to give effect to any species of disposition in a will.

" * * *

"V. That the heir is not to be disinherited without an express devise or necessary implication; such implication importing, not natural necessity, but so strong a probability that an intention to the contrary cannot be supposed.

"VI. That merely negative words are not sufficient to exclude the title of the heir or next of kin. There must be an actual gift to some other definite object.

" * * *

"X. The Court will look at the circumstances under which the devisor makes his will, —as the state of his property, of his family, and the like.

"XI. That, in general, implication is admissible only in the absence of, and not to control, an express disposition.

" * * *

"XIV. That the rules of construction cannot be strained to bring a devise within the rules of law; * * *

" * * *

"XIX. That words and limitations may be transposed, supplied or rejected, where warranted by the immediate context, or the general scheme of the will; but not merely on a conjectural hypothesis of the testator's intention, however reasonable, in opposition to the plain and obvious sense of the language of the instrument.

" * * *

"XXIII. That where a testator's intention cannot operate to its full extent, it shall take effect as far as possible."

See I Harrison, Wills and Administration, page 374, et seq.

Keeping the foregoing rules of construction in mind, I advert to certain cases decided by this Court. In *Graham* v. *Graham*, 23 W. Va. 36, the following language appears in the body of the opinion: "It was held by this Court in *Houser* v. *Ruffner*, 18 W. Va. 244, that in construing wills, words and expressions of doubtful meaning will not be construed, if it can be avoided, so as to create an intestacy. The testator having made his will will be presumed to have intended to dispose of his whole estate, unless the contrary plainly appear. While this is true, there is another rule quite as binding on the court in the construction of a will, viz., that the heir must not be disinherited, unless it is done by the express terms of the will or by necessary implication. (*Irwin* v. *Zane*, 15 W. Va. 646.) The heir at law never takes by the act or in-

tention of the testator. His right is paramount to and independent of the will, and no intention of the testator, is necessary to its enjoyment. On the contrary, such right can only be displaced or precluded by direct words or plain intention, evincing a desire upon the part of the testator, that he shall not take, &c. He needs no argument or construction showing intention in his favor to support his claim. They belong to the party claiming under the will and in opposition to him. *Augustus* v. *Seabolt,* 3 Metc. (Ky.) 155. In *Creswell* v. *Lanson,* 7 Gill. & Johns, 227, it was held, that the heir being favored in law, there should be no strained construction to work a disherison, where the words are ambiguous."

The statement with reference to necessary implication has been construed in the case of *Bartlett* v. *Patton,* 33 W. Va. 71, 10 S. E. 21, and carried into a syllabus point in *Barker* v. *Haner,* 111 W. Va. 238, 161 S. E. 566, in the following language: " 'Necessary implication mean[s] so strong a probability of intention that an intention contrary to that imputed to the testator cannot be supposed. The whole will, taken together, must produce the conviction that the testator's intention was to create the estate raised by implication.' (*Bartlett* v. *Patton,* 33 W. Va. 71.)"

As a matter of application of a construction of a will, which does not work a disherison of the heir, in the case of *Boisseau and Others* v. *Aldridges,* 5 Leigh 222, the court refused to give testamentary effect to a writing positively and without ambiguity disinheriting the two sisters of an alleged testator who had married contrary to his wishes, the court holding in that case that the paper writing before it was not a testamentary paper because it gave no property to any person. The holding in that case seems to follow the general rule that a paper writing merely disinheriting an heir will not be given testamentary effect; that a testator, in order to disinherit an heir, must dispose of his property to some other person. See *Sutherland* v. *Sydnor* (Va.), 6 S. E. 480.

The phrase in the writing here considered, "my Trustee and Executor, which shall take charge of my estate and dispose of it in the following manner", can not be relied upon to strengthen the allegedly dispositive portion of the will which is held to have established a testamentary trust. *Spurrier* v. *Hobbs*, 68 W. Va. 729, 70 S. E. 760. The first point of the syllabus in the opinion in that case is as follows: "Though an introductory clause in a will may express an intention on the part of the testator to dispose of his whole estate, this does not supersede the necessity of his subsequently carrying that intention into effect by an actual disposition."

A careful analysis of the provisions of John Ball's will with reference to a testamentary trust fails to disclose any actual words expressly disposing of his property. And hence it follows that if that portion of the will is to be relied upon as necessarily implying a testamentary trust, it must also carry with it the thought that the contrary can not be supposed.

It is entirely conceivable from the words of the will that the testator did not mean to vest in his trustee the actual ownership of the residue of his estate. The words, "take charge", used in that portion of the will are entirely compatible with the duties of an executor who has been given the power to sell. In the case of *Linton* v. *Linton*, 114 W. Va. 711, 173 S. E. 778, this Court held that if real estate is devised to an executor with power to sell the same and distribute the proceeds as directed by the will, the legal title is vested in the executor. On the other hand, in the body of the opinion at page 713, the Court quotes with approval the language used by this Court in *Milhollen* v. *Rice*, 13 W. Va. 510, 534, as follows: " 'Where a testator devises land to his executors to sell, the executors take a fee simple estate in the lands. But where a testator devises, that his executor shall sell his land, or that his lands shall be sold by his executor, no estate is thereby conferred on the executor; but he has merely a power to sell.' *Milhollen* v. *Rice*, 13 W. Va. 510, 534. This is the general rule. 4 Kent's Commentaries

(14th Ed.), p. 372; 11 Am. and Eng. Ency. of Law (2d Ed.), p. 1035." So, at most, the executor in the instant case was only given a power to sell the land and took no title to it. See *Coles' Heirs* v. *Jamerson* (Va.), 71 S. E. 618.

I think the proposition that no technical words are necessary in a will to effect a disposition of property is sound, but there must be language from which it appears that a testator intended to dispose of his property and vest title in a trustee. "He [the testator] may have intended so, but he did not say so." *Voluit, sed non dixit.* Black's Law Dictionary, 4th Ed., page 1746.

The nearest approach to the instant case is that of *Moon* v. *Stewart* (Ohio), 101 N. E. 344, Ann. Cas. 1914A, 104. The first item of the will in that case provided for the payment of debts. The second item read as follows: "I hereby make my two granddaughters, Lulu Stewart and Ella Breakfield, each equal heirs with my own children." In that case the Court held that the language was sufficient to make the two granddaughters named in the second item devisees under the will.

I do not think that the general statement, partially quoted in the Court's opinion, from 54 Am. Jur., Trusts, Section 65, is sufficient to support the conclusion reached in this case. An examination of the cases cited in support of that general statement discloses many divergencies from the instant case.

In the case of *Cummings* v. *Cummings* (Mass.), 16 N. E. 401, the words, "give, devise, bequeath, direct," and "It is my will that", appear in all of the items of the will quoted in the court's opinion. Clearly, they are words of disposition. In the case of *Sherwin* v. *Smith* (Mass.), 185 N. E. 17, the phrases, "I bequeath and devise as follows", "I also give and bequeath", and "The rest and residue I direct to be equally divided * * *", clearly are words of disposition, and it is unnecessary to search for a necessarily implied meaning. In the case of *In the Matter of the Estate of Prosper A. Pierce* (Wis.), 14 N. W.

588, the first item of the will provided, "I give, devise and bequeath to my wife * * *". The sixth item of the will considered by the Court contained the words, "I give, devise and bequeath to my two sons * * *". In *Welch* v. *Caldwell*, 226 Ill. 488, 80 N. E. 1014, the Court considered the eighth, ninth, tenth and last items of the will of the testator. In the eighth and ninth items the testator used the words, "I direct". In the tenth item he used the words, "I hereby authorize." In the last part of his will, in positive language, he appointed his wife to be his executrix. It was also urged in that case that the eighth and ninth items of the will were void because of the uncertainty of the objects and beneficiaries of the gifts, which is a far different issue from the problem here presented.

In *Heiseman* v. *Lowenstein* (Ark.), 169 S. W. 224, the Court dealt with words and phrases which are somewhat precatory and held the dispositions set forth in the long will valid. The opinion in that case deals mostly with the powers of a personal representative. In *Sherlock* v. *Thompson* (Iowa), 148 N. W. 1035, the sixth, seventh and eighth items of the will contained the words, "I give, devise and bequeath". In *Booth* v. *Krug* (Ill.), 14 N. E. 2d 645, the testator used such words as "It is my will", "The executors of this will are hereby authorized and directed", etc.

It will thus be seen from an examination of the cases cited in the Court's opinion as supporting the general statement that the language in the testamentary writings considered in those cases is varied. That brings to mind an accepted theory in construction of wills that seldom is one will case a precedent to aid in the construction of another.

I fail to see any language in the will here considered which would in any way indicate by direct expression or by necessary implication any intention on the part of the testator to dispose of any of his estate otherwise than the household goods and tools. I think that the testator died intestate as to the bulk of his property, notwithstanding the presumption as to intestacy.

A will may be valid in part and invalid in part. See 57 Am. Jur., Wills, Section 38.

I think that the Court's opinion in this case establishes a trust on weak implications and thereby disinherits the heirs. I would give effect to accepted rules of construction and hold that the will in this case was sufficient to appoint an executor who has the duty of paying the testator's debts, and possibly to sell his land and distribute the proceeds, but that no duties of a trustee would devolve upon it since there is no trust *res* to which the trust could attach. "A trust *res* is necessary for the creation of a trust." *Casualty Co.* v. *Fuel Co.*, 123 W. Va. 541, 17 S. E. 2d 51, 137 A.L.R. 488.

I would affirm the trial court.