Syllabus.

## Wytheville.

### COLES' HEIRS AND OTHERS V. JAMERSON.

June 8, 1911.

1. TAXATION—*Assessment in Name of Owner After His Death.*— Where there is no record or other evidence of the death of the owner of land, the failure to charge land to his estate upon the land-books, as provided by section 474, will not invalidate an assessment of taxes thereon in the name of such owner instead of his estate, and a sale thereof for delinquent taxes passes the title.

2. TAXATION—*Listing Land by Color of Owner—Mistake—Effect.*— The validity of an assessment for taxes on land is not affected by the fact that the land was registered on the land-book in the white list, when it should have been in the colored list. The requirement of section 464 of the Code, with respect to separate lists for white and colored tax payers, was a purely statistical measure, and its non-observance cannot affect the validity of the assessment.

3. TAX DEEDS—*Recital of Date of Sale—Adjournment.*—The recital in a tax deed that the sale was made on a designated day and year "after due advertisement as required by law" is a sufficient recital with respect to the fact of the sale, without specifically reciting the fact of the adjournment of the sale.

4. TAX DEEDS—*Recital of Sale and Confirmation Essential to Validity.*—The treasurer's report of sale and the order of the court confirming it constitute "circumstances appearing in the clerk's office in relation to the sale," the recital of which is essential to the validity of the tax-deed under section 655 of the Code.

5. EXECUTORS—*Power to Sell Land—Title—Ejectment—Parties.*—A direction in a will that land be sold by executors gives them only a power of sale, and no interest in the land. A suit to recover such land must be brought by the heirs. The title to the land devolved upon them upon the death of the testator, subject to be divested only by a lawful execution of the power of sale.

6. EXECUTORS—*Failure to Qualify—Administration "Without Will Annexed."—Quare:* If one dies leaving a will, and the execu-

tor fails to qualify, and another is appointed administrator only on his estate, without "the will annexed," the validity of such appointment for any purpose may well be doubted.

7. PARTIES—*Misjoinder.*—If an improper plaintiff be joined in an action of ejectment, the court should order an abatement as to him and proceed in the names of the other plaintiffs as provided by section 3258a of the Code.

Error to a judgment of the Circuit Court of Buckingham county in an action of ejectment. Judgment for the defendant. Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*John M. Payne* and *Harrison & Long,* for the plaintiffs in error.

*Hubard & Gayle* and *A. B. Dickinson,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This action of ejectment was brought by the plaintiffs in error against the defendant in error, John D. Jamerson, to recover 342 acres of land in Buckingham county, formerly the property of J. M. Coles, deceased, who was the ancestor of the plaintiffs (except T. H. Dickinson), and was bought by the defendant's assignor at a sale for delinquent taxes, and is held by the assignee under a tax deed from the clerk bearing date February 10, 1896. There was a verdict and judgment for the defendant, to which judgment this writ of error was awarded.

The specific grounds of attack upon the title of the defendant are as follows: (1) Because the land was assessed for taxation in the name of J. M. Coles for several years after his death and when returned delinquent, when it should have been charged to his estate; (2) because the

land was registered on the land book in the white list, when it should have been registered in the colored list, Coles being a negro; (3) because the tax deed does not recite the adjournment of the sale; and (4) because the deed also fails to show that there was a report by the county treasurer of the sale and the confirmation of such report and sale by the court. We shall consider these several contentions in the order stated.

(1) It is true section 474 of the Code provides that when the owner of land dies, having, as in this instance, devised the same to be sold, "it shall continue charged to the decedent's estate until a transfer thereof." Coles was not a resident of Buckingham county, and his will was probated in Prince Edward county, so that the records of the former county did not supply the information contemplated by sections 459 and 460, nor was such information furnished by the parties in interest, as provided by section 463. It would be an unreasonable construction of section 474 to hold that a failure, after Coles' death, to charge the land to his estate would invalidate the assessment.

Section 473 declares that land correctly charged to one person shall not be afterwards charged to another person without evidence of record that such charge is proper.

In construing section 13, Ch. 183, 2 Rev. Code 1819, which is similar to section 474, *supra,* in *Usher's Heirs* v. *Pride,* 15 Gratt. 190, Allen, P., at p. 200, observes: "I think, however, the entry in the name of the patentees (who had died) concludes the heirs and purchasers claiming under them, and they were forfeited for the delinquency in failing to pay the taxes charged thereon."

So, in *Stevenson* v. *Henkel,* 100 Va. 591, 42 S. E. 672, a mistake in the name of the owner, if not calculated to mislead, is immaterial.

Again, section 661 provides that "the right or title to

40

such estate shall stand vested in the grantee in such deed as it was vested in the party assessed with the taxes or levies on account whereof the sale was made at the commencement of the year for which said taxes or levies were assessed; or in any person claiming under such party . . . "

(2) The requirement of section 464, with respect to separate lists for white and colored tax payers, was intended as a basis for the apportionment of the school tax fund between the white and colored races in proportion to the amount of taxes contributed by them respectively. It was purely a statistical measure (which was never carried into effect), and its non-observance could not affect the validity of the assessment.

(3) The third assignment calls in question the validity of the tax deed because it does not recite the fact of the adjournment of the sale. The deed does state that the sale was made by the county treasurer at public auction at the front of the court-house on February 10, 1896, "after due advertisement as required by law," and that, we think, was a sufficient recital with respect to the fact of the sale. *Flanagan* v. *Grimmet,* 10 Gratt. 421.

(4) The last assignment involves the failure of the deed to recite that the county treasurer made a report of the sale, or that the sale was confirmed by the court, or that it was recorded as required by sections 642, 645, 662.

It is provided by section 655 that the tax deed "shall set forth all the circumstances appearing in the clerk's office in relation to the sale."

In 2 Minor on Real Property, sec. 1383, the "circumstances" required to be recorded in the clerk's office are summarized as follows:

"1. The *listing* and *valuation* of the land by the assessors and commissioners of the revenue, as contained in their returns to the court or the clerk;

2. The *levy* of the tax by the commissioner of the revenue;

3. The *list of delinquent taxes,* returned by the county or city treasurer, recorded in the clerk's office in the 'delinquent tax book';

4. The *treasurer's report of sales,* recorded in the clerk's office in the 'delinquent land book';

5. The *notice or advertisement* of the sales, which appears by way of *recital* in the *treasurer's report of sales;*

6. The order of court confirming the sale;

7. The surveyor's report, with plat and certificate showing the metes and bounds of the tract sold, the names of adjoining owners, and giving such further description of the land as will serve to identify it and enable the clerk to describe it properly in the tax deed."

Minor on Tax Titles, 118, 119; *Delaney* v. *Goddin,* 12 Gratt. 266; *Boon* v. *Simmons,* 88 Va. 259, 113 S. E. 439.

We are of opinion that the treasurer's report of sale and the order of the court confirming the sale constitute "circumstances appearing in the clerk's office in relation to the sale," the recital of which is essential to the validity of the tax deed under section 655.

The only assignment of cross-error on behalf of the defendant in error which we deem it necessary to notice involves the ruling of the circuit court in regard to the right of T. H. Dickinson, sheriff of Prince Edward county, and as such administrator of J. M. Coles, deceased, to maintain this action.

The supposed devolution of title to the land in controversy on Dickinson is founded upon the hypothesis that as administrator with the will annexed of Coles, he succeeded to the title vested in the executrix, Hannah Coles, by the will of her late husband under section 2663 of the Code.

In *Ely* v. *Wynn,* 22 Gratt. 224, 230, it was held that the statute does not operate as a conveyance of the estate, or

any interest therein, to the executor, but merely gives him power to make any sale of real estate which the will directs to be sold, without empowering any particular person to make the sale; and that the title vested in the heirs, who were the proper parties to maintain ejectment for the land.

In this case, the provision of the will is, that after six months from the death of the testator the land shall be sold by his executrix. The will does not devise the land to the executrix to be sold, but invests her merely with a qualified power of sale.

In Croswell on Executors and Administrators, section 330, the author says: "The question often arises whether, under the words of the will, the executor holds the land in trust to sell, or whether he has a mere power to sell the land. The importance of this distinction is obvious, since in the one case the title to the land vests in the executor, while in the other it vests in the heirs subject to be divested by the execution of the power of the executor. It is said to be now settled that if the land is devised to the executor to sell, or devised subject to the debts of the testator, this passes the interest in the lands to the executor; but a direction that the executors shall sell the land gives them only a power of sale, and no interest in the land." See also 18 Cyc., 302, 303.

11 Am. & Eng. Enc. of Law (2nd ed.), 1035, lays down the same rule as in accordance with the weight of authority.

In the instant case, however, T. H. Dickinson did not succeed even to the powers of the executrix with respect to the real estate under Coles' will, by virtue of section 2663. It affirmatively appears from the record that he was not appointed *administrator with the will annexed,* but administrator only. The validity of such appointment for any purpose, where there is a will, may well be questioned. In *Ewing* v. *Snead,* 5 J. J. Marshall (Ky.) 459, it was held to be void.

Upon this branch of the case, we are of opinion that the legal title to the land devolved upon the heirs at law of J. M. Coles, deceased, subject to be divested only by a lawful execution of the power of sale. The circuit court ought, therefore, to have ordered the action to abate as to T. H. Dickinson, and to proceed in the name of the other plaintiffs, heirs at law of J. M. Coles, deceased, as if such misjoinder had not been made, in accordance with section 3258-a of the Code.

The judgment of the circuit court, for the reasons stated, must be reversed and the verdict of the jury set aside, and the case remanded for a new trial to be had in accordance with this opinion.

*Reversed.*