# CIRCUIT COURT OF ARLINGTON COUNTY

In re Estate of
Virginia Slaven Woods

June 29, 2006

Case No. (Chancery) 02-318

BY JUDGE JAMES F. ALMAND

The Court must determine whether the Executrix of the estate of Virginia Slaven Woods has the authority and ability to convey an entire interest in real property if part of that property has already been transferred to a third party by one of the devisees under the will. The Court must then examine whether the proposed sale of real property by the Executrix amounts to self-dealing or a violation of her duty of loyalty as a fiduciary.

Having taken the matter under advisement and after reviewing the memoranda and arguments of the parties, the Court holds that under the facts and circumstances present in this case, the Executrix retains the power of sale over the property even after the devisee has transferred her share to a third-party and that the proposed sale by the Executrix is not a violation of her duty of loyalty as a fiduciary and should therefore proceed.

*Factual and Procedural Background*

Virginia Slaven Woods died on March 21, 2005, survived by her three children, Randall C. Kelly, Richard J. Kelly, and Judith Gillcrist. On March 25, 2005, Ms. Woods' Last Will and Testament was admitted to probate in the Arlington Circuit Court. Ann M. Kelly, Ms. Woods' daughter-in-law, qualified as Executrix of the Estate.

Article IV of Ms. Woods' Will provided in part:

I give, devise, and bequeath all of the rest, residue, and remainder of my estate of whatsoever character, wheresoever situated, and whensoever acquired in fee simple and in absolute estate unto my three children, namely Judith Kelly Gillcrist, Richard Jay Kelly, and Randall Charles Kelly, to be divided equally among them.

Part of Ms. Woods' Estate included an undivided one-half interest in 70.47 acres of land in Loudoun County. The Randall Kelly Living Trust owned the remaining one-half, with Ms. Woods' former husband, Randall Kelly, serving as the Trustee. In her role as the Executrix, Ms. Kelly had the property appraised by Norman I. Myers. As of March 19, 2005, Mr. Myers valued the undivided half-interest at $937,500.00. A re-appraisal of the property on April 18, 2006, established a value of $975,000.00. On October 31, 2005, the Executrix received an offer for the property from Randall Kelly, on behalf of the Randall Kelly Living Trust, to purchase the Estate's interest for $940,500.00. Following the re-appraisal, the offer increased to $975,000.00.

On January 30, 2006, the Executrix filed a Petition to Sell Real Estate, asking the Court for approval of the property sale to Mr. Kelly. The Executrix relied on the authority granted to her pursuant to Article VI of the Will, which stated, in part:

I hereby give to my Executor full power and discretion in the management and control of my estate, with the right and power to sell all or any portion thereof, including real estate, which she may deem necessary, in the absolute exercise of her discretion, for the payment of just debts or legacies bequeathed, or for the advantageous distribution of my estate, or for any other reason which my Executor may deem proper and advisable, and with necessity of making prior application to, or obtaining approval of, any Court for authority to do so.

Two of the devisees under the Will, Randall C. Kelly and Richard Kelly, requested that the Executrix accept the offer from the Randall Kelly Living Trust. However, Ms. Gillcrist opposed the sale on a number of grounds, arguing that the Executrix's Duty of Loyalty prohibited her from engaging in a transaction that would benefit individuals with whom she is closely related, as well as that the amount offered for the property was not fair and reasonable. A hearing on the Petition to Sell Real Estate was scheduled for April 27, 2006.

Prior to the hearing, on April 24, 2006, Ms. Gillcrist executed a deed conveying all of her interest in the Loudoun property to her husband, James Gillcrist. At the hearing, the Executrix asked the Court to approve the sale of Ms. Woods' undivided one-half interest in the Loudoun property to Mr. Kelly, for the sum of $975,000.00. However, Ms..Gillcrist argued that the conveying of her interest in the real property precluded any such sale, as Mr. Gillcrist had obtained a vested interest in one-third of the property that could not be defeated by the Executrix's power of sale. The Court ordered that the parties prepare additional briefs on this issue, due no later than May 18, 2006, with all subsequent responses to be submitted by May 25, 2006.

## Power of Sale

A will can confer the power of sale over real estate to the executor without devising the property to him or her. In such a case, the executor is given a "naked" power of sale, as title to the real estate passes to the devisees under the will, subject to divestiture by exercise of the executor's power of sale. *Coles v. Jamerson*, 112 Va. 311, 316 (1911). This gives the executor no interest in the real property, only the power of sale. *Id*. Where an executor holds only a naked power of sale, the devisees are entitled to use of the property until the power of sale is executed. *See Stark v. City of Norfolk*, 183 Va. 282, 288 (1944). However, if the devise is to the executor along with the "superadded" power of sale, then title to the real estate passes directly to the executor, who is empowered to hold the property until the sale is completed. *Id*.

In this case, the Executrix was granted a broad power of sale, with ample discretion as to how and when this power could be employed. Article VI of the Will states that the Executrix has "*full power and discretion* in the management and control of my estate, with the right and power to sell all of any portion thereof, including real estate, which she *may deem necessary in the absolute exercise of her discretion*, for the payment of just debts or any legacies bequeathed, *or for the advantageous distribution of my estate, or for any other reason which my Executor may deem proper and advisable*" (emphasis added). While the discretion granted to the Executrix for sale of property is broad, the terms are clear that the real estate is not being devised directly to the Executrix to be sold, but simply gives her the power of sale. As such, the real estate vests in the devisees, with a one-third interest in the property vesting in Ms. Gillcrist.

While it is clear that title to the real estate has passed to the devisees, the issue is whether one of those devisees can then defeat the Executrix's power of sale by transferring their share to a third party. Ms. Gillcrist points to *Yamada v. McLeod*, 243 Va. 426 (1992), and *Dominion Bank v. Holdren*, 31 Va. Cir. 410 (Roanoke, 1993), as support for her position that the conveyance of her interest in the property to a third party precludes the Executrix from exercising her power of sale in regards to that interest.

While these cases are instructive on the issues surrounding an executor's naked power of sale, neither deals with the issue at hand. Both *Yamada* and *Dominion Bank* briefly touch on the issue of third parties having interests that attach to the property vested in the devisees. However, neither case discusses the situation presented here, where the devisee disposes of the property in a way that would completely prevent the executor from exercising the power of sale.

Both of these cases clearly establish the nature of the interest vested in the devisees and the power that remains with the executor. In *Yamada*, the court clearly stated that "[u]pon execution of the naked power of sale by the executors, title to the land is 'divested' from the devisees." *Yamada*, 243 Va. at 431, citing *Stark*, 183 Va. at 288 ("If . . . a naked power of sale only is conferred, the land descends to the heir or passes the devisee under the will, and such heir or devisee is entitled to the use of the property until the executor or trustee executes the power."); *Coles*, 112 Va. at 316 (it vests in the heirs subject to be divested by the execution of the power of the executor.").

It is clear that, pursuant to a naked power of sale, the devisee receives title to the property, but that it is subject to subsequent divestment upon the exercise of the power of sale by the executor. To allow a devisee to transfer their interest to a third party and thereby prevent the exercise of the power of sale would completely ignore the latter half of this established principle. An executor's power of sale would be at the mercy of the devisee, who could negate any possible divestment by simply transferring their interest in the property to a third party.

Ms. Gillcrist argues that she elected to take her interest in the Loudoun property in kind rather than in monetary form and that, at that point, the Executrix's power to sell that interest became extinguished. However, none of the cases cited support the proposition that the executor's powers are subject to the devisee's seemingly superior right to negate the power of sale and simply take their share of any property in kind. To do so would give any of the devisees the right to take their share of the real property on their own accord and remove the executor's ability to divest them of their title in the real estate. This would severely weaken the power

of sale granted to the executor and create a troubling incentive for the executor and devisee to rush into a sale on their own terms before the other party can divest them of their authority to sell.

Ms. Gillcrist argues that it was Ms. Woods' intent to devise the property to her children, who could then elect to take the property in kind. However, there is no such provision in the Will that supports this argument, as the three children were simply given, pursuant to Article IV of the Will, "the rest, residue, and remainder of my estate . . . in fee simple and in absolute estate . . . to be divided equally among them." The Court also notes that Ms. Woods' intent was far more clear in giving the Executrix broad discretion in the management and control of the estate, because the Will gives the Executor "full power and discretion . . . with the right and power to sell all or any portion thereof, *including real estate*, which she may deem necessary in the absolute exercise of her discretion . . . for any other reason which my Executor may deem proper and advisable. . . ." (emphasis added).

Ms. Gillcrist further notes that there is no provision in the Will that would preclude the children from electing to take their interests in kind and that, if Ms. Woods did not want title to vest in her children, she could have devised her real property directly to the Executrix, with the superadded power to sell the property and distribute the property. However, the fact that the Will gave the Executrix only a naked power of sale does not mean that she is powerless to prevent the devisees from selling off their interests in the real property. Assuming that a will giving the executor only a naked power of sale also gives the devisees an unwritten option to sell off their shares in the real estate on their own accord would go too far. There are other legitimate reasons why a testator may wish to give only a naked power of sale to the executor, including the fact that it ensures that the devisees are entitled to use of the property until the sale is completed.

The Will clearly provides the Executrix with broad discretion in her exercise of the power of sale, as Article VI of the Will gives her "full power and discretion" with the power to sell any portion of the estate as she finds to be necessary "in the absolute exercise of her discretion." This language evinces a strong intent on the part of the testator to ensure that the Executrix would not be limited in deciding how to manage the property of the estate. *See Crouch v. Robin*, 18 Va. Cir. 339, 341 (Loudoun, 1989) (language in will provided no limitations on the power of sale). There has been no evidence presented that the Executrix has abused her discretion under the broad terms of the Will. As such, the Court finds that the Executrix was well within her discretionary powers to sell the Loudoun real estate.

Even though Ms. Gillcrist has already transferred her share of the property to her husband, it does not appear from the evidence that Mr. Gillcrist qualifies as a *bona fide* purchaser. Mr. Gillcrist did not purchase the property for valuable consideration and he was at the very least on constructive notice of the Executrix's power of sale as to the Loudoun property as a whole. While a *bona fide* purchaser for value is certainly a "great favorite of a court of equity," the Court will not provide the same protections to those who do not give consideration or who fail to take notice of defects in title. *See Wood v. Krebs,* 71 Va. (30 Gratt.) 708, 714-15 (1878). In this case, it is clear that Mr. Gillcrist is not entitled to the same protections provided to a *bona fide* purchaser and that the property remains subject to divestment under the power of sale held by the Executor.

The Court concludes that the conveyance by Ms. Gillcrist of her interest in the Loudoun property to her husband does not negate the Executrix's power of sale under the terms of the Will. The interest devised to Ms. Gillcrist remains subject to divestment, and the power of sale granted to the Executrix is not extinguished by any such conveyance or transfer of the interests held by the devisees.

## Duty of Loyalty

Ms. Gillcrist has also opposed the Executrix's proposed sale of the Loudoun property on the grounds that the buyer is the Randall Kelly Living Trust, with Mr. Kelly serving as the trustee. Citing to the Restatement of Trusts, Ms. Gillcrist argues that the Executrix has a fiduciary duty of loyalty that prohibits transactions between fiduciaries and family members and that, because of the Executrix's close relationship with her father-in-law, she cannot exercise her power to sell the property to Mr. Kelly. *See* Restatement (Third) of Trusts § 78, cmt. e (Tentative Draft No. 4, 2005).

It is true that a fiduciary is barred by their duty of loyalty to the beneficiaries from engaging in transactions with family members. However, this prohibition goes only so far, generally extending to a fiduciary's spouse and parents, the fiduciary's descendants and their spouses, as well as other persons who are natural objects of the fiduciary's bounty. *See* Restatement (Third) of Trusts § 78, cmt. e (Tentative Draft No. 4, 2005). There is no strict prohibition or a presumption of divided loyalty for transactions involving more remote relatives or personal and business acquaintances of a fiduciary. *Id.*

As to the Executrix and her father-in-law, there is no automatic prohibition against such a transaction simply because the parties are related through marriage. There was no additional evidence submitted that

demonstrated that the Executrix was improperly influenced by her relationship with Mr. Kelly, and therefore the Court determines that no conflict of interest exists. In addition, as to whether the price offered by Mr. Kelly was fair and reasonable, the Court heard from the appraiser, Mr. Myers, and received evidence justifying the price offered by Mr. Kelly. The Court concludes that the price was fair and reasonable and that it was within the Executrix's discretionary powers to accept such an offer from the Randall Kelly Living Trust.

## *Conclusion*

Counsel for the Executrix shall draft a final order memorializing the Court's opinion and authorizing the sale of the property as requested.